UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
AMEY COOPER and GREGORY SMITH,

Plaintiffs,

11 Civ. 00069 (LMS)

-against-

CITY OF NEW ROCHELLE, DETECTIVE MICHAEL O'ROURKE, individually and in his capacity as a member of the City of New Rochelle Police Department; DETECTIVE JOHN PASTORE, individually and in his capacity as a member of the City of New Rochelle Police Department; POLICE OFFICERS JOHN DOE NUMBERS ONE THROUGH FIVE (fictitious names whose actual names are presently unknown), individually and in their capacity as members of the City of New Rochelle Police Department; POLICE OFFICER JANE DOE (a fictitious name whose actual name is presently unknown), individually and in her capacity as a member of the City of New Rochelle Police Department, and DETECTIVE JOHN DOE, (a fictitious name whose actual name is presently unknown) individually and in his capacity as a member of the City of New Rochelle Police Department,

Defendants.
-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT**
**<u>OF MOTION FOR SUMMARY JUDGMENT</u>**

**SOKOLOFF STERN LLP**
355 Post Avenue, Suite 201
Westbury, NY 11590
(516) 334-4500
Our File No. 110003

*Of counsel:*
Brian S. Sokoloff
Mark A. Radi

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 1

STANDARD OF REVIEW ........ 1

ARGUMENT ........ 2

POINT I ........ 2

DETECTIVE O'ROURKE LAWFULLY STOPPED COOPER'S VEHICLE AND SEARCHED SMITH

POINT II ........ 6

DETECTIVE O'ROURKE HAD PROBABLE CAUSE TO ARREST SMITH

POINT III ........ 8

SMITH'S MALICIOUS PROSECUTION CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW

POINT IV ........ 11

DETECTIVE O'ROURKE LAWFULLY SEARCHED COOPER'S VEHICLE

POINT V ........ 12

PLAINTIFFS' DUE PROCESS CLAIMS SHOULD BE DISMISSED

POINT VI ........ 13

THERE IS NO EVIDENCE TO SUPPORT PLAINTIFFS' EQUAL PROTECTION CLAIMS

POINT VII ........ 15

PLAINTIFFS' SIXTH AMENDMENT CLAIMS SHOULD BE DISMISSED

POINT VIII ........ 16

THERE IS NO EVIDENCE TO SUPPORT PLAINTIFFS' CONSPIRACY CLAIMS

POINT IX ........ 17

THERE IS NO EVIDENCE TO SUPPORT SMITH'S CLAIM FOR DENIAL OF MEDICAL TREATMENT ........ 17

POINT X ........................................................................................................................ 19

THERE IS NO EVIDENCE TO SUPPORT ANY OF PLAINTIFFS' CLAIMS AGAINST THE CITY

POINT XI ...................................................................................................................... 24

ALL OF PLAINTIFFS' CLAIMS AGAINST DETECTIVE PASTORE SHOULD BE DISMISSED

POINT XII ..................................................................................................................... 25

THE DETECTIVES ARE ENTITLED TO QUALIFIED IMMUNITY

POINT XIII .................................................................................................................... 27

PLAINTIFF'S STATE LAW CLAIMS ARE TIME-BARRED

POINT XIV .................................................................................................................... 29

THE EVIDENCE DOES NOT SUPPORT AN AWARD OF PUNITIVE DAMAGES

CONCLUSION ................................................................................................................ 29

# TABLE OF AUTHORITIES

## Cases

Adams v. Williams,
407 U.S. 143 (1972) .... 4

Albright v. Oliver,
510 U.S. 266 (1994) .... 13

Anderson v. City of New York,
817 F. Supp. 2d 77 (E.D.N.Y. 2011) .... 28

Anderson v. Creighton,
483 U.S. 635 (1987) .... 26

Arena v. Vill. of Suffern, N.Y.,
No. 7:09-cv-4647 (WWE), 2011 WL 1330755 (S.D.N.Y. Mar. 30, 2011) .... 12

Arizona v. Gant,
556 U.S. 332 (2009) .... 8, 11

Arizona v. Johnson,
555 U.S.323 (2009) .... 3

Ashcroft v. al-Kidd,
131 S. Ct. 2074 (2011) .... 25, 26

Ashcroft v. Iqbal,
556 U.S. 662 (2009) .... 24

Back v. Hastings On Hudson Union Free Sch. Dist.,
365 F.3d 107 (2d Cir. 2004) .... 24

Basnight v. Rossi,
No. 97-CV-1312, 2003 WL 722810 (E.D.N.Y. March 4, 2003) .... 19

Batista v. Rodriguez,
702 F.2d 393 (2d Cir.1983) .... 21

Bd. of Cnty. Comm'rs v. Brown,
520 U.S. 397 (1997) .... 20, 21

Berdugo v. City of New York,
No. 03 Civ. 7319(HB), 2004 WL 1900357 (S.D.N.Y. Aug. 24, 2004) .................................... 18

Bernstein v. City of New York,
No. 06 Civ. 895(RMB), 2007 WL 1573910 (S.D.N.Y. May 24, 2007) .............................. 9, 21

Bohmer v. New York,
No. 06 Civ. 11370(KTD), 2011 WL 2651872 (S.D.N.Y. June 16, 2011) ............................... 21

Brewton v. City of New York,
550 F. Supp. 2d 355 (E.D.N.Y. 2008) ................................................................................. 6, 26

Brito v. Arthur,
403 F. App’x 620 (2d Cir. 2010) ......................................................................................... 17

Brogdon v. City of New Rochelle,
200 F. Supp. 2d 411 (S.D.N.Y. 2002)................................................................................ 26, 28

Broughton v. State,
37 N.Y.2d 451 (1975) .............................................................................................................. 6

Brown v. City of New York,
306 F. Supp. 2d 473 (S.D.N.Y. 2004)..................................................................................... 20

Brown v. City of Oneonta, N.Y.,
221 F.3d 329 (2d Cir. 2000)............................................................................................. 14, 15

Bryant v. Maffucci,
923 F.2d 979 (2d Cir. 1991).................................................................................................... 20

Butz v. Economou,
438 U.S. 478 (1978)................................................................................................................. 26

Caiozzo v. Koreman,
581 F.3d 63 (2d Cir. 2009)....................................................................................................... 18

Castro v. United States,
34 F.3d 106 (2d Cir. 1994)....................................................................................................... 26

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)................................................................................................................... 2

Cine SK8, Inc. v. Town of Henrietta,
507 F.3d 778 (2d Cir. 2007)..................................................................................................... 16

City of Canton v. Harris,
489 U.S. 378 (1989) ..... 20, 21

City of Los Angeles v. Heller,
475 U.S. 796 (1986) ..... 21

City of Newport v. Fact Concerts, Inc.,
453 U.S. 247 (1981) ..... 29

Claudio v. City of New York,
423 F. Supp. 2d 170 (S.D.N.Y. 2006) ..... 21

Cruz v. Reilly,
No. 08-CV-1245 (JFB)(AKT), 2009 WL 2567990 (E.D.N.Y. Aug. 18, 2009) ..... 17

Cuoco v. Moritsugu,
222 F.3d 99 (2d Cir. 2000) ..... 18

Davis v. City of New York,
No. 07 Civ. 1395 (RPP), 2008 WL 2511734 (S.D.N.Y. June 19, 2008) ..... 21

DiBlasio v. City of New York,
102 F.3d 654 (2d Cir. 1996) ..... 9

Dukes v. City of New York,
879 F. Supp. 335 (S.D.N.Y.1995) ..... 7

Dunaway v. New York,
442 U.S. 200 (1979) ..... 9

Dwares v. City of New York,
985 F.2d 94 (2d Cir. 1993) ..... 21

Elliott v. Cnty. of Monroe,
115 F. App’x 497 (2d Cir. 2004) ..... 18

Ehrlich v. Town of Glastonbury,
348 F.3d 48 (2d Cir. 2003) ..... 26, 29

Engquist v. Oregon Dep’t of Agric.,
553 U.S. 591 (2008) ..... 14

Escalera v. Lunn,
361 F.3d 737 (2d Cir. 2004) ..... 26

Farag v. United States,
587 F. Supp. 2d 436 (E.D.N.Y. 2008) ........................................................................ 13

Farmer v. Brennan,
511 U.S. 825 (1994)................................................................................................ 18

Faretta v. California,
422 U.S. 806 (1975) ................................................................................................ 15

Flowers v. City of Minneapolis, Minn.,
558 F.3d 794 (8th Cir. 2009) .................................................................................... 14

Floyd v. City of New York,
No. 08 Civ. 1034 (SAS), 2012 WL 13445141 (S.D.N.Y. Apr. 16, 2012)................................. 3

Frigerio v. United States,
No. 10 Civ. 9086 (SAS), 2011 WL 3163330 (S.D.N.Y. July 22, 2011) ................................... 6

Frooks v. Town of Cortlandt,
997 F. Supp. 438 (S.D.N.Y. 1998)............................................................................. 16

Gallop v. Cheney,
642 F.3d 364 (2d Cir. 2011)...................................................................................... 17

Gaston v. City of New York,
No. 11 Civ. 4750(AJP), 2012 WL 1085804 (S.D.N.Y. Apr. 2, 2012)...................................... 2

Gentile v. Cnty. of Suffolk,
926 F.2d 142 (2d Cir. 1991)...................................................................................... 20

Gerstein v. Pugh,
420 U.S. 103 (1975)................................................................................................ 13

Gilles v. Repicky,
511 F.3d 239 (2d Cir. 2007)........................................................................................ 3

Graham v. Connor,
490 U.S. 386 (1989)................................................................................................ 13

Graham v. Henderson,
89 F.3d 75 (2d Cir. 1996) .......................................................................................... 17

Green v. City of Yonkers, N.Y., No. 10 Civ. 3653(JFK), 2012 WL 554453 (S.D.N.Y. Feb. 21, 2012) ..................................................................................................................... 17

Hagan v. Soto,
523 F. Supp. 625 (S.D.N.Y. 1981)........................................................................ 15, 16

Harlow v. Fitzgerald,
457 U.S. 800 (1982)........................................................................................... 25

Harris v. Cnty. of Nassau,
581 F. Supp. 2d 351 (E.D.N.Y. 2008) ................................................................ 12, 15

Harris v. Town of Islip Hous. Auth.,
825 F. Supp. 2d 370 (E.D.N.Y. 2011) ....................................................................28E

Hartline v. Gallo,
546 F.3d 95 (2d Cir. 2008)................................................................................... 17

Hathaway v. Coughlin,
37 F.3d 63 (2d Cir. 1994) ..................................................................................... 18

Illinois v. Gates,
462 U.S. 213 (1983)........................................................................................... 4, 7

Illinois v. Wardlow,
528 U.S. 119 (2000)............................................................................................... 3

Ivani Contr. Corp. v. City of New York,
103 F.3d 257 (2d Cir. 1997)................................................................................. 29

Jocks v. Tavernier,
316 F.3d 128 (2d Cir. 2003)................................................................................... 8

Johnson v. City of New York,
No. 05 Civ. 2357(SHS), 2006 WL 2354815 (S.D.N.Y. Aug. 14, 2006) ............................... 8, 9

Johnson v. City of New York,
No. 08 Civ. 5277 (SHS), 2010 WL 2292209 (S.D.N.Y. June 7, 2010)................................... 11

Jones v. Parmley,
465 F.3d 46 (2d Cir. 2006)................................................................................... 27

Koester v. Lanfranchi,
288 F. App’x 764 (2d Cir. 2008) ............................................................................ 7

Kurschus v. PaineWebber, Inc.,
16 F. Supp. 2d 386 (S.D.N.Y. 1998)...................................................................... 28

Lawrence v. City Cadillac,
No. 10 Civ. 3324(PKC), 2010 WL 5174209 (S.D.N.Y. Dec. 9, 2010) .................................... 10

Lawrence v. Town of Brookhaven Dep't of Hous.,
393 F. App'x 791 (2d Cir. 2010) ........................................................................................... 21

Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,
507 U.S. 163 (1993) ............................................................................................................. 21

Li v. Aponte,
No. 05 Civ. 6237 (NRB), 2008 WL 4308127 (S.D.N.Y. Sept. 16, 2008) ................................ 15

Little v. City of New York,
487 F. Supp. 2d 426 (S.D.N.Y. 2007)..................................................................................... 12

Llerando-Phipps v. City of New York,
390 F. Supp. 2d 372 (S.D.N.Y. 2005)................................................................................... 8, 9

Longinott v. Bouffard,
No. 11 CV 4245 (VB), 2012 WL 1392579 (S.D.N.Y. Apr. 17, 2012)............................... 13, 16

MacFawn v. Kresler,
88 N.Y.2d 859 (1996) ............................................................................................................. 9

Maliha v. Faluotico,
286 F. App'x 742 (2d Cir. 2008) ........................................................................................... 13

Mapp v. Ohio,
367 U.S. 643 (1961)................................................................................................................. 9

Martinez v. Simonetti,
202 F.3d 625 (2d Cir. 2000).................................................................................................. 26

Mathie v. Fries,
121 F.3d 808 (2d Cir. 1997).................................................................................................. 29

Mazzilli v. City of New York,
154 A.D.2d 355 (2d Dep't 1989)........................................................................................... 27

McCray v. City of New York,
No. 03 Civ. 9685 (DAB), 2007 WL 4352748 (S.D.N.Y. Dec. 11, 2007)................................ 22

Miner v. Clinton Cnty.,
541 F.3d 464 (2d Cir. 2008).................................................................................................. 14

Mitchell v. Forsyth,
472 U.S. 511 (1985) ... 25

Monell v. Dep't of Soc. Servs.,
436 U.S. 658 (1978) ... 20, 21, 22, 23

Moody v. Town of Greenburgh,
No. 09-Civ-6579 (GAY), 2012 WL 1174754 (S.D.N.Y. Apr. 9, 2012) ... 16, 29

Morales v. City of New York,
209 F. App'x. 75 (2d Cir. 2006) ... 26

Moscoso v. City of New York,
92 F. Supp. 2d 310 (S.D.N.Y. 2000) ... 10

Murphy v. Lynn,
118 F.3d 938 (2d Cir. 1997) ... 9

Nance v. N.Y.C. Police Dep't ex rel. McKay Chung,
No. 01CV424(JB)(JMA), 2003 WL 1955164 (E.D.N.Y. Apr. 24, 2003) ... 19

Neighbour v. Covert,
68 F.3d 1508 (2d Cir. 1995) ... 21

O'Bradovich v. Vill. of Tuckahoe,
325 F. Supp. 2d 413 (S.D.N.Y. 2004) ... 17

Oklahoma City v. Tuttle,
471 U.S. 808 (1985) ... 20

Okoh v. Sullivan,
No. 10 Civ. 2547(SAS), 2011 WL 672420 (S.D.N.Y. Feb. 24, 2011), aff'd, 441 F. App'x 813 (2d Cir. 2011) ... 14

Pearson v. Callahan,
555 U.S. 223 (2009) ... 25

People v. Huntley, 15 N.Y.2d 72 (1965) ... 9

Perkins v. Brown, 285 F. Supp. 2d 279 (E.D.N.Y. 2003) ... 19

Peters v. Concialdi,
No. 84 Civ. 7683 (PKL), 1986 WL 8077 (S.D.N.Y. July 11, 1986) ... 15

Peterson v. Cnty. of Nassau,
995 F. Supp. 305 (E.D.N.Y. 1998) ... 6

Plair v. City of New York,
789 F. Supp. 2d 459 (S.D.N.Y. 2011)........................................................................ 20

Prasad v. City of New York,
No. 08 Civ. 3818 (PAC), 2009 WL 1119412 (S.D.N.Y. Apr. 24, 2009) ................................ 14

Prophete v. City of New York,
No. 07 CV 3061 (NG) (LB), 2008 WL 4185876 (E.D.N.Y. Sept. 9, 2008)............................ 21

Rakas v. Illinois,
439 U.S. 128 (1978)................................................................................................ 11

Ricciuti v. N.Y.C. Transit Auth.,
124 F.3d 123 (2d Cir. 1997)...................................................................................... 7

Rivera-Powell v. N.Y.C. Bd. of Elections,
470 F.3d 458 (2d Cir. 2006)...................................................................................... 14

Rockland Vending Corp. v. Creen,
No. 07-CV-6268 (KMK), 2009 WL 2407658 (S.D.N.Y. Aug. 4, 2009)................................ 13

Rodriguez v. City of New York,
No. 02 Civ. 8203(SAS), 2004 WL 444089 (S.D.N.Y. Mar. 10, 2004) ..................................... 2

Romero v. Napoli,
No. 08 Civ. 8380(CM)(HBP), 2009 WL 212415 (S.D.N.Y. Jan. 29, 2009) ........................... 16

Rounseville v. Zahl,
13 F.3d 625 (2d Cir. 1994)........................................................................................ 10

Santos v. N.Y.C.,
No. 11 Civ. 0291 (VM), 2012 WL 843740 (S.D.N.Y. Mar. 6, 2012) ..................................... 22

Schneckloth v. Bustamonte,
412 U.S. 218 (1973)................................................................................................ 11

Sforza v. City of New York,
No. 07 Civ. 6122(DLC), 2009 WL 857496 (S.D.N.Y. Mar. 31, 2009)..................................... 6

Shankle v. Andreone,
No. 06-CV-487 (NG)(LB), 2009 WL 3111761 (E.D.N.Y. Sept. 25, 2009)....................... 18, 19

Sharapata v. Town of Islip,
56 N.Y.2d 332 (1982) .............................................................................................. 29

Sheikh v. City of N.Y., Police Dep't,
Nos. 03-CV-6326 (NGG), 05-CV-4718 (NGG),
2008 WL 5146645 (E.D.N.Y. Dec. 5, 2008) .......... 12, 15

Singer v. Fulton Cnty. Sheriff,
63 F.3d 110 (2d Cir. 1995) .......... 6, 8

Smith v. City of New York,
No. 04 Civ. 3286 (TPG), 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010) .......... 28

Smith v. Wade,
461 U.S. 30 (1983) .......... 29

Tellier v. Krimmer,
No. CV 96-1000 (RJD), 1996 WL 518108 (E.D.N.Y. Sept. 4, 1996) .......... 28

Terry v. Ohio,
392 U.S. 1 (1968) .......... 2, 3

Texas v. Cobb, 532 U.S.162 (2001) .......... 15

Tribie v. Parwanta,
No. 10 CV 6016 (VB), 2012 WL 246619 (S.D.N.Y. Jan. 26, 2012) .......... 13, 17

United States v. Rivera,
353 F. App'x 536, 536 (2d Cir. 2009) .......... 4

United States v. Arellano,
No. 05 CR 655 SLT, 2006 WL 897973 .......... 3

United States v. Aulicino,
44 F.3d 1102 (2d Cir. 1995) .......... 11

United States v. Cruz,
834 F.2d 47 (2d Cir.1987) .......... 12

United States v. Elmore,
482 F.3d 172 (2d Cir. 2007) .......... 4, 7

United States v. Gagnon,
373 F.3d 230 (2d Cir. 2004) .......... 3, 4

United States v. Gaskin,
364 F.3d 438 (2d Cir.2004) .......... 12

United States v. Gonzalez,
No. 08 Cr. 363 (BSJ), 2009 WL 613201, (S.D.N.Y. Mar. 4, 2009),
aff'd, 441 F. App'x 31 (2d Cir. 2011) .......... 3, 4, 7, 8, 11, 12

United States v. Hensley,
469 U.S. 221 .......... 3

United States v. Navas,
597 F.3d 492 (2d Cir. 2010) .......... 11

United States v. Pena Ontiveros,
547 F. Supp. 2d 323 (S.D.N.Y. 2008), aff'd sub nom. .......... 11

United States v. Perez,
No. 94 Cr. 0342 (RWS), 1994 WL 702058 (S.D.N.Y. Dec. 15, 1994) .......... 7

United States v. Rico Beltran,
409 F. App'x 441 (2d Cir. 2011) .......... 11

United States v. Ruggiero,
824 F. Supp. 379 (S.D.N.Y. 1993) .......... 11

United States v. Swindle,
407 F.3d 562 (2d Cir. 2005) .......... 3

United States v. Tehrani,
49 F.3d 54 (2d Cir. 1995) .......... 3

Vann v. City of New York,
72 F.3d 1040 (2d Cir. 1995) .......... 20

Velasquez v. City of New York,
No. 08 Civ. 08478(RJH), 2012 WL 232432 (S.D.N.Y. Jan. 25, 2012) .......... 2, 20

Vill. of Willowbrook v. Olech,
528 U.S. 562 (2000) .......... 14

Washington v. Cnty. of Rockland,
373 F.3d 310 (2d Cir. 2004) .......... 8

Washpon v. Parr,
561 F. Supp. 2d 394 (S.D.N.Y. 2008) .......... 26

Weinstock v. Columbia Univ.,
224 F.3d 33 (2d Cir. 2000) .......... 2

Weyant v. Okst,
101 F.3d 845 (2d Cir. 1996)........................................................................................ 6

Whren v. United States,
517 U.S. 806 (1996)..................................................................................................... 3

Williams v. City of New York,
No. 02 Civ. 3693, 2003 WL 22434151 (S.D.N.Y. Oct. 3, 2003) .............................................. 9

Williams v. City of New York,
No. 07 Civ. 3764(RJS), 2008 WL 3247813 (S.D.N.Y. Aug. 7, 2008) ...................................... 9

**Statutes**

42 U.S.C. § 1985.......................................................................................................... 16

42 U.S.C. § 1986.......................................................................................................... 17

Fed. R. Civ. P. 56(a) ...................................................................................................... 2

N.Y. Gen. Mun. Law § 50-i(1) ................................................................................. 27, 28

## PRELIMINARY STATEMENT

This action arises out of the stop and search of Cooper's vehicle and the subsequent arrest and prosecution of Smith for possession of marijuana and cocaine. It is undisputed that, on the date of the incident, New Rochelle Police Department (NRPD) detectives O'Rourke and Pastore ("the Detectives") received a tip from a past proven-reliable confidential informant that Smith had purchased, and was in possession of, crack cocaine and was entering Cooper's vehicle. The informant identified Smith by name. He also described Cooper's vehicle and gave its location. The informant's tip provided Detective O'Rourke with reasonable suspicion to stop Cooper's car and initially search Smith.

Detective O'Rourke had probable cause to arrest Smith after Smith admitted that he possessed marijuana. Detective O'Rourke then lawfully searched Smith and Cooper's vehicle incident to arrest. The undisputed material facts require the Court to dismiss as a matter of law plaintiffs' unlawful search and seizure, false arrest, and malicious prosecution claims. In a "kitchen sink strategy," plaintiffs assert a myriad of other claims in a subject to dismissal as a matter of law.[1]

## STATEMENT OF FACTS

Defendants respectfully refer the Court to the accompanying *Defendant's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1* for a full recitation of the undisputed material facts of this case.

## STANDARD OF REVIEW

Summary judgment is appropriate where the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

[1] Defendants move to dismiss all of plaintiffs' claims except Smith's § 1983 excessive force claim against Detective O'Rourke.

law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Velasquez v. City of New York, No. 08 Civ. 08478(RJH), 2012 WL 232432, at *4 (S.D.N.Y. Jan. 25, 2012). "The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof." Gaston v. City of New York, No. 11 Civ. 4750(AJP), 2012 WL 1085804, at *3 (S.D.N.Y. Apr. 2, 2012) (citing Celotex Corp., 477 U.S. at 323).

The non-movant must do "more than simply show that there is some metaphysical doubt as to the material facts." Id. (citation omitted). The non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." Rodriguez v. City of New York, No. 02 Civ. 8203(SAS), 2004 WL 444089, at *2 (S.D.N.Y. Mar. 10, 2004) (citation omitted). "The mere existence of a scintilla of evidence supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (citations omitted). Summary judgment can be defeated "only by producing specific facts showing that there is a genuine issue of material fact for trial." Velasquez, 2012 WL 232432, at *4 (citation omitted). Summary judgment is the time "to put up or shut up." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). As set forth below, there is no evidence to support plaintiffs' claims, and the undisputed material facts demonstrate that defendants are entitled to judgment as a matter of law.

## ARGUMENT

## POINT I

## DETECTIVE O'ROURKE LAWFULLY STOPPED COOPER'S VEHICLE AND SEARCHED SMITH

The evidence establishes that Detective O'Rourke properly stopped Cooper's vehicle. The Constitution forbids only "unreasonable searches and seizures." Terry v. Ohio, 392 U.S. 1, 9 (1968). An automobile stop is valid if it is reasonable under the circumstances. Whren v.

United States, 517 U.S. 806, 810 (1996); United States v. Swindle, 407 F.3d 562, 566 (2d Cir. 2005).  The constitutional reasonableness of a traffic stop does not depend on the actual motivations of the individual officers involved, so long as the circumstances, when viewed objectively, justify the stop.  United States v. Arellano, No. 05 CR 655 SLT, 2006 WL 897973, at *2 (quoting Whren, 517 U.S. at 813)).  An investigative detention may last as long as necessary to effectuate the purpose of the stop.  Gilles v. Repicky, 511 F.3d 239, 245 (2d Cir. 2007).  "The temporary seizure of a driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop."  Arizona v. Johnson, 555 U.S.323, 333 (2009).

A police officer may stop a car and conduct an "investigative detention" if he has "reasonable suspicion" to believe that the occupants were involved, are involved, or will be involved in criminal activity.  See United States v. Hensley, 469 U.S. 221, 229; Terry, 392 U.S. 1, 30; United States v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995); Floyd v. City of New York, No. 08 Civ. 1034 (SAS), 2012 WL 1344514, at *1 (S.D.N.Y. Apr. 16, 2012); United States v. Gonzalez, No. 08 Cr. 363 (BSJ), 2009 WL 613201, at *4 (S.D.N.Y. Mar. 4, 2009), aff'd, 441 F. App'x 31 (2d Cir. 2011).  Reasonable suspicion must be supported by "articulable facts that criminal activity may be afoot."  Tehrani, 49 F.3d at 58 (citations omitted).  Reasonable suspicion demands less than probable cause and requires a showing considerably less than a preponderance of the evidence.  Illinois v. Wardlow, 528 U.S. 119, 123 (2000).  Though an officer must have more than a suspicion or hunch of criminal activity, the Fourth Amendment requires only "a minimal level of objective justification for making the stop."  Id. at 123-24.

"Often the information needed to supply probable cause is not gathered independently by police officers but instead is provided by professional criminal informants . . . ."  United States v. Gagnon, 373 F.3d 230, 236 (2d Cir. 2004) (citation omitted).  "Reasonable suspicion may be

based upon information from a confidential informant so long as the tip bears sufficient 'indicia of reliability.'" United States v. Elmore, 482 F.3d 172, 179 (2d Cir. 2007) (quoting Adams v. Williams, 407 U.S. 143, 147 (1972)); see also U.S. v. Rivera, 353 F. App'x 536, 536 (2d Cir. 2009); Gonzalez, 2009 WL 613201, at *4. The quality of an informant's tip is assessed in light of the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230-31 (1983). Veracity, reliability, and the basis of the informant's knowledge are important considerations. Id. at 230. However, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Id. at 233.

"Even a tip from a completely anonymous informant . . . can form the basis of reasonable suspicion or probable cause if it is sufficiently corroborated." Elmore, 482 F.3d at 179. Where the informant is known, however, a lesser degree of corroboration is required because his reputation may be assessed and he may be held accountable for false tips. Id. at 180; see also Gagnon, 373 F.3d at 236 (noting that known informant is more reliable than an "anonymous telephone tipster"). A proven track record of providing reliable tips bolsters an informant's veracity. Id. "Where the informant is known from past practice to be reliable, no corroboration will be required to support reasonable suspicion." Id. at 181.

Here, it is undisputed that Detective O'Rourke received a call on his cell phone from a past proven-reliable confidential informant. (Def.'s 56.1 ¶¶ 48, 88.) The informant stated that a male by the name of Gregory Smith purchased and was in possession of crack cocaine at Horton Avenue, a known drug area. (Id. ¶¶ 87, 96.) The Detectives knew that Smith was the person the informant had identified. (Id. ¶ 100.) The Detectives knew Smith before that date as they had seen him "numerous, numerous times" in known drug locations. (Id. ¶ 101.)

The informant: (1) informed Det. O'Rourke that Smith was entering a Jeep and (2) described Smith and the Jeep. (Id. ¶¶ 97-98.) When they got the informant's call, the Detectives were conducting surveillance in that area. They saw Smith walking on Horton Avenue and entering the front passenger seat of the Jeep at the corner of Horton Avenue and Brook Street. (Id. ¶¶ 86, 87, 102.) Det. O'Rourke followed the vehicle; he never lost sight of it before pulling it over. (Id. ¶¶ 103-06.) Det. O'Rourke stopped the vehicle because the informant advised him that Smith was in possession of narcotics. (Id. ¶ 107.) Det. O'Rourke eventually recovered from Smith both marijuana and a white substance that tested positive to be cocaine. (Id. ¶¶ 120-21, 146-47, 196.) The confidential informant was subsequently paid for the information he provided regarding Smith. (Id. ¶ 109.)

NRPD confidential informants fill out applications, are interviewed, and must prove they are trustworthy by providing reliable information. (Id. ¶¶ 46-48.) They are paid based on the reliability of the information. (Id. ¶¶ 51.) This particular informant was registered to Det. O'Rourke. (Id. ¶ 89.) Det. Pastore also knew the informant and was present for the call. (Id. ¶¶ 90, 94.) The informant called Det. O'Rourke whenever he had information. (Id. ¶ 93.) Det. O'Rourke had used this informant more than ten times in the past and paid him for his information each time. (Id. ¶¶ 91-92.)

The totality of these undisputed circumstances demonstrates that the informant's tip was reliable. The informant was not an anonymous telephone tipster; he was registered by the NRPD and the Detectives knew him. The Detectives considered him truthful and reliable as he had provided them with substantiated information in the past. Moreover, the Detectives independently corroborated the tip by observing Smith enter the Jeep. Therefore, the Detectives had reasonable suspicion to stop Cooper's vehicle and initially search Smith's person.

## POINT II

## DETECTIVE O'ROURKE HAD PROBABLE CAUSE TO ARREST SMITH

The undisputed evidence undermines Smith's false arrest claim. To succeed on a claim for false arrest, a plaintiff must show that defendants intended to confine him, he was conscious of the confinement, he did not consent to the confinement, and the confinement was not privileged. Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (quoting Broughton v. State, 37 N.Y.2d 451, 456 (1975)). "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause." Id. at 118-19. The existence of probable cause is an issue of law to be determined by the court when the pertinent facts are undisputed. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

Probable cause "constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Id. (internal citations and quotations omitted); Frigerio v. United States, No. 10 Civ. 9086 (SAS), 2011 WL 3163330, at *8 (S.D.N.Y. July 22, 2011). "The requirement of probable cause does not create a high bar for law enforcement." Sforza v. City of New York, No. 07 Civ. 6122(DLC), 2009 WL 857496, at *13 (S.D.N.Y. Mar. 31, 2009). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852.

The validity of an arrest does not depend on an ultimate finding of guilt. Peterson v. Cnty. of Nassau, 995 F. Supp. 305, 313 (E.D.N.Y. 1998). An officer's state of mind at the time the arrest is also immaterial. Brewton v. City of New York, 550 F. Supp. 2d 355, 363 (E.D.N.Y. 2008). The court's inquiry focuses solely on the facts available to the officer at the time of

arrest.  Id. (citing Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997); Dukes v. City of New York, 879 F. Supp. 335, 340 (S.D.N.Y.1995)).  "An arresting officer need not have concrete proof of each element of a crime to establish probable cause for an arrest."  Id. at 365. Probable cause focuses on "probabilities," not "hard certainties."  Koester v. Lanfranchi, 288 F. App'x 764, 766-67 (2d Cir. 2008) (quoting Gates, 462 U.S. at 231-32).

A warrantless arrest is fully justified if there is "probable cause when the defendant is put under arrest to believe that an offense has been or is being committed."  Gonzalez, 441 F. App'x at 33-34 (citation omitted).  As is the case with "reasonable suspicion," probable cause may also be based upon information from a confidential informant where the tip bears sufficient "indicia of reliability."  Gates, 462 U.S. at 230-31; Gonzalez, 441 F. App'x at 34; Elmore, 482 F.3d at 179.  Moreover, it is possible that, in the process of an investigatory stop, "reasonable suspicion" will "ripen" into "probable cause" to justify a full search for arrest where an officer gains additional information that is sufficient, in combination with that which is already known, to warrant a reasonable belief that contraband is present or that the individuals who are the subject of the stop may be involved in a crime.  United States v. Perez, No. 94 Cr. 0342 (RWS), 1994 WL 702058, at *6 (S.D.N.Y. Dec. 15, 1994) (citing cases).

For the reasons set forth in Point I, supra, Det. O'Rourke had probable cause to stop and arrest Smith based upon a tip from a past proven-reliable confidential informant who stated that Smith had purchased, and was in possession of, crack cocaine.  Moreover, it is undisputed that the Detectives recovered two bags of marijuana from Smith who was admittedly in possession of the drugs during his encounter with the Detectives.  (Def.'s 56.1 ¶¶ 119-21.)  Once Det. O'Rourke recovered the marijuana from Smith, he had probable cause to arrest him.  See Johnson v. City of New York, No. 05 Civ. 2357(SHS), 2006 WL 2354815, at *4 (S.D.N.Y. Aug.

14, 2006) ("Moreover, Johnson's eventual arrest was proper because, according to his own deposition testimony, he told police officers that any 'weed' they found on his pants was his. Whether or not there was probable cause to believe that the cocaine found in the apartment was his (a point heavily contested by plaintiff) is irrelevant because Johnson's admission of marijuana possession was sufficient on its own to merit his arrest.") (Internal citation omitted).[2]

**POINT III**

**SMITH'S MALICIOUS PROSECUTION CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW**

There is zero evidence to support Smith's malicious prosecution claim. To succeed on this claim, a plaintiff must demonstrate the initiation or continuation of a criminal proceeding, termination of the proceeding in his favor, lack of probable cause for commencing the proceeding, and actual malice as a motivation for defendants' actions. Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). A plaintiff must also show "a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment" to sustain the claim under § 1983. Washington v. Cnty. of Rockland, 373 F.3d 310, 316 (2d Cir. 2004) (quoting Singer, 63 F.3d at 117).

There is no evidence that Det. O'Rourke initiated Smith's prosecution. There is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding. Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005). "Once a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor." Williams v. City of New York, No. 02 Civ. 3693, 2003

[2] "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." See Arizona v. Gant, 556 U.S. 332, 338 (2009) (citation omitted); Gonzalez, 2009 WL 613201, at *3 ("Once under arrest, a suspect automatically may be subjected to a warrantless search incident to that arrest."). Accordingly, the Court should dismiss any claims asserted by Smith based upon the search of his person after he was arrested.

WL 22434151, at *6 (S.D.N.Y. Oct. 3, 2003); see also Bernstein v. City of New York, No. 06 Civ. 895(RMB), 2007 WL 1573910, at *6 (S.D.N.Y. May 24, 2007). An arresting officer may only be held liable for malicious prosecution where he creates false information likely to influence a jury's decision and forwards that information to prosecutors. Llerando-Phipps, 390 F. Supp. 2d at 383. Here, the prosecutor decided whether, and what, charges to file against Smith. (Def.'s 56. ¶ 201.) Det. O'Rourke merely provided his account of the incident to the prosecutor and signed the complaint. (Id. ¶¶ 197-98.) There is zero evidence that he created and forwarded any false information to the prosecutor. See Johnson, 2006 WL 2354815, at *4.

Second, the evidence does not support a finding that the criminal proceeding was terminated in Smith's favor. "Proceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." DiBlasio v. City of New York, 102 F.3d 654, 658 (2d Cir. 1996); Williams v. City of New York, No. 07 Civ. 3764(RJS), 2008 WL 3247813, at *4 (S.D.N.Y. Aug. 7, 2008). The final disposition of the proceeding must involve the merits and indicates the accused's innocence. MacFawn v. Kresler, 88 N.Y.2d 859, 860 (1996). "[W]hether the termination is indicative of innocence depends on the nature and circumstances of the termination; the dispositive inquiry is whether the failure to proceed implies a lack of reasonable grounds for the prosecution." Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir. 1997) (citation omitted). Here, Smith requested Mapp, Dunaway, and Huntley hearings.[3] (Def.'s 56.1 ¶ 205.) The prosecutor chose not to proceed with the charges against Smith due to concerns for the informant's safety (Ex. K.), and the charges were dismissed. Such a dismissal

[3] Mapp and Dunaway hearings are used to decide whether evidence was obtained through a violation of a criminal defendant's Fourth Amendment right to be free of unreasonable searches and seizures and whether probable cause existed for the arrest. Mapp v. Ohio, 367 U.S. 643 (1961); Dunaway v. New York, 442 U.S. 200 (1979). A Huntley hearing is a hearing conducted to determine the admissibility of extrajudicial statements made by a criminal defendant. People v. Huntley, 15 N.Y.2d 72 (1965).

cannot constitute a favorable termination as it does not imply a lack of reasonable grounds for the prosecution, does not involve the merits, and is not indicative of Smith's innocence.

Third, as stated above, there was probable cause to prosecute Smith. Probable cause bars state and federal law malicious prosecution claims against the arresting officer, unless the officer, following the arrest but prior to initiating prosecution, learned of facts that negate his earlier determination of probable cause. Moscoso v. City of New York, 92 F. Supp. 2d 310, 313 (S.D.N.Y. 2000). "While probable cause present at the time of arrest can dissipate by the time criminal proceedings are commenced, it only does so where the groundless nature of the charges [are] made apparent by the discovery of some intervening fact." Lawrence v. City Cadillac, No. 10 Civ. 3324(PKC), 2010 WL 5174209, at *6 (S.D.N.Y. Dec. 9, 2010) (citation omitted). Here, Smith was admittedly in possession of marijuana. (Def.'s 56.1 ¶¶ 120-21.) The evidence demonstrates that Det. O'Rourke recovered a substance from the scene that tested positive for cocaine. (Id. ¶¶ 146-47, 196.) Det. O'Rourke testified that Smith was resisting arrest and trying to conceal or destroy the cocaine. (Id. ¶¶ 129, 131, 135.) Accordingly, there was probable cause to charge Smith with obstructing governmental administration in the second degree, criminal possession of a controlled substance in the seventh degree, resisting arrest, and unlawful possession of marijuana. (Id. ¶ 202.) There is no evidence that the Detectives learned of any facts between Smith's arrest and prosecution to negate probable cause.

Finally, plaintiff cannot show malice. In this regard, a plaintiff must show that the defendant "commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." Rounseville v. Zahl, 13 F.3d 625, 630 (2d Cir. 1994). The existence of probable cause precludes a finding of malice. Johnson v. City of New York, No. 08 Civ. 5277 (SHS), 2010 WL 2292209, at *6 (S.D.N.Y. June 7,

2010). There is no evidence that the Detectives acted with malice. Rather, the evidence demonstrates probable cause to prosecute. Accordingly, the Court should dismiss this claim.[4]

## POINT IV

## DETECTIVE O'ROURKE LAWFULLY SEARCHED COOPER'S VEHICLE

The undisputed facts demonstrate that the search of Cooper's car was proper.[5] An officer need not have a warrant or probable cause to search if there is consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Pena Ontiveros, 547 F. Supp. 2d 323, 330 (S.D.N.Y. 2008), aff'd sub nom. United States v. Rico Beltran, 409 F. App'x 441 (2d Cir. 2011). Here, Cooper testified that Det. O'Rourke asked her if he could search the area where Smith had been sitting and she said, "Okay." (Def.'s 56.1 ¶¶ 124-25.)

Moreover, "an automobile may be searched incident to the arrest of an occupant even after the arrestee has been secured and cannot access the interior of the vehicle as long as 'it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.'" Gonzalez, 441 F. App'x at 34 (quoting Gant, 556 U.S. at 335). Here, once Smith was placed under arrest for marijuana possession, Det. O'Rourke was lawfully permitted to search the passenger area of the vehicle, which he did. (Def.'s 56.1 ¶ 126.)

Another exception to the warrant requirement is the "automobile exception." United States v. Navas, 597 F.3d 492, 497 (2d Cir. 2010) (citation omitted). "When probable cause exists to believe an automobile contains contraband or other evidence of criminality, police 'may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages in the vehicle.'" Gonzalez, 2009 WL 613201, at *4 (quoting United States v.

---

[4] In addition to each of these reasons, this claim against Det. Pastore falls for lack of personal involvement. See Point XI, infra.

[5] As a mere passenger in Cooper's vehicle, Smith does not have standing to challenge its search. See Rakas v. Illinois, 439 U.S. 128, 134 (1978); United States v. Ruggiero, 824 F. Supp. 379, 393 (S.D.N.Y. 1993), aff'd sub nom. United States v. Aulicino, 44 F.3d 1102 (2d Cir. 1995).

Cruz, 834 F.2d 47, 51 (2d Cir.1987); United States v. Gaskin, 364 F.3d 438, 456 (2d Cir.2004)); United States v. Howard, 489 F.3d 484, 492 (2d Cir. 2007). "Probable cause in this context does not demand certainty but only a 'fair probability' that contraband or evidence of a crime will be found." Gonzalez, 441 F. App'x at 34 (citation omitted). It is undisputed that an informant advised Det. O'Rourke that Smith entered the vehicle in possession of cocaine. It is also undisputed that Det. O'Rourke recovered marijuana from Smith. Although Smith denies possessing cocaine, since Smith had been a passenger in Cooper's car, there was a "fair probability" that he dumped the cocaine in the vehicle when Cooper was pulled over. Thus, there was probable cause to believe that Cooper's vehicle contained drugs, justifying the search.

## POINT V
## PLAINTIFFS' DUE PROCESS CLAIMS SHOULD BE DISMISSED

As a matter of law, the Court should dismiss plaintiffs' procedural and substantive due process claims, which are based on the November 1, 2008 incident.[6] "Due process is violated where officers act in bad faith and make an arrest without probable cause." Sheikh v. City of N.Y., Police Dep't, Nos. 03-CV-6326 (NGG), 05-CV-4718 (NGG), 2008 WL 5146645, at *8 (E.D.N.Y. Dec. 5, 2008). As articulated above, there was reasonable suspicion to stop Cooper's vehicle, which led to probable cause to arrest Smith. "Where, as here, probable cause has been clearly established, there can be no claim for denial of either the procedural or substantive right to due process." Id. (quoting Harris v. Cnty. of Nassau, 581 F. Supp. 2d 351, 357 (E.D.N.Y. 2008)); see also Little v. City of New York, 487 F. Supp. 2d 426, 442-43 (S.D.N.Y. 2007).

Additionally, all of plaintiffs' claims fall within the ambit of the Fourth Amendment and should not be analyzed under the Due Process Clause. See Albright v. Oliver, 510 U.S. 266, 273

[6] To the extent that plaintiffs assert due process claims under the Fifth Amendment, they should be dismissed as the Fifth Amendment's Due Process Clause is only applicable to claims against the federal government. Arena v. Vill. of Suffern, N.Y., No. 7:09-cv-4647 (WWE), 2011 WL 1330755, at *3 n.1 (S.D.N.Y. Mar. 30, 2011).

(1994) ("Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (citation omitted); Graham v. Connor, 490 U.S. 386, 395 (1989) ("*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach") (emphasis in original); Gerstein v. Pugh, 420 U.S. 103, 125 n.27 (1975) ("The Fourth Amendment was tailored explicitly for the criminal justice system, and it [] . . . always has been thought to define the 'process that is due' for seizures of person or property in criminal cases . . . ."); Maliha v. Faluotico, 286 F. App'x 742, 744 (2d Cir. 2008); Longinott v. Bouffard, No. 11 CV 4245 (VB), 2012 WL 1392579, at *6 (S.D.N.Y. Apr. 17, 2012); Tribie v. Parwanta, No. 10 CV 6016 (VB), 2012 WL 246619, at *8 (S.D.N.Y. Jan. 26, 2012); Rockland Vending Corp. v. Creen, No. 07-CV-6268 (KMK), 2009 WL 2407658, at *4 (S.D.N.Y. Aug. 4, 2009) ("a due process claim relying on the same facts as a false imprisonment claim cannot be sustained"); Farag v. United States, 587 F. Supp. 2d 436, 450 n.22 (E.D.N.Y. 2008). The Court should dismiss this claim as duplicative of plaintiffs' Fourth Amendment claims.

## POINT VI

## THERE IS NO EVIDENCE TO SUPPORT PLAINTIFFS' EQUAL PROTECTION CLAIMS

The Court should dismiss plaintiffs' unsupported equal protection claims as a matter of law. To state a selective enforcement equal protection claim, plaintiffs must allege that they were selectively adversely treated compared with others similarly situated and that the selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or

punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. Miner v. Clinton Cnty., 541 F.3d 464, 474 (2d Cir. 2008). "Where 'a plaintiff seeks to prove selective prosecution on the basis of race, he must show that similarly situated individuals of a different race were not prosecuted.'" Prasad v. City of New York, No. 08 Civ. 3818 (PAC), 2009 WL 1119412, at *4 (S.D.N.Y. Apr. 24, 2009) (quoting Brown v. City of Oneonta, N.Y., 221 F.3d 329, 337 (2d Cir. 2000)). Absent proof that the alleged selective enforcement was based on an impermissible consideration, a plaintiff is relegated to a "class of one" claim and must demonstrate that there was no rational basis for the selective treatment and that the differential treatment resulted from a non-discretionary state action. Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 603-04 (2008); Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). Regardless of the theory, "[c]onclusory allegations of selective treatment are insufficient to state an equal protection claim." Okoh v. Sullivan, No. 10 Civ. 2547(SAS), 2011 WL 672420, at *4 (S.D.N.Y. Feb. 24, 2011), aff'd, 441 F. App'x 813, 814 (2d Cir. 2011); see also Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 470 (2d Cir. 2006).

Here, there is zero evidence to support either theory of equal protection. There is no evidence proving that plaintiffs were treated differently from any similarly situated comparators; plaintiffs do not even allege as much. There is no evidence, and plaintiffs do not allege, that the stop and search of Cooper's vehicle or Smith's arrest and prosecution were the result of any impermissible considerations. Rather, the evidence demonstrates there was reasonable suspicion to stop Cooper and probable cause to arrest Smith. Such actions are exactly the sort of discretionary actions that cannot form the basis of a class of one claim. See Engquist, 553 U.S. at 603-04; Flowers v. City of Minneapolis, Minn., 558 F.3d 794, 799-800 (8th Cir. 2009) (police officer's discretionary investigative decisions may not be attacked via class-of-one equal

protection claim). The Court should dismiss this claim summarily. Hagan v. Soto, 523 F. Supp. 625, 629 (S.D.N.Y. 1981); Harris, 581 F. Supp. 2d at 357.[7]

## POINT VII

### PLAINTIFFS' SIXTH AMENDMENT CLAIMS SHOULD BE DISMISSED

There is no evidence to support plaintiffs' claims that they were denied their rights to be informed of the accusations against them. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall . . . be informed of the nature and cause of the accusation . . . ." U.S. Const. amend. VI. The Sixth Amendment "is a statement of the 'rights necessary to a full defense,' and its scope is limited to criminal prosecutions." Sheikh, 2008 WL 5146645, at *10 (quoting Faretta v. California, 422 U.S. 806, 818 (1975); Texas v. Cobb, 532 U.S. 162, 173 n.3 (2001)). In cases concerning arrests made without a warrant and prior to an indictment, courts have found that an arresting officer has no constitutional obligation to inform an arrestee of the charges against him at the time of arrest. Id. (citing cases).

Here, the Sixth Amendment did not require the Detectives to inform plaintiffs of any charges against them at the time of the stop. Cooper has no claim because there were no charges brought against her. Li v. Aponte, No. 05 Civ. 6237 (NRB), 2008 WL 4308127, at *11 (S.D.N.Y. Sept. 16, 2008); Peters v. Concialdi, No. 84 Civ. 7683 (PKL), 1986 WL 8077, at *2 (S.D.N.Y. July 11, 1986). In fact, Cooper was advised at the scene that she did not do anything wrong and was not placed in custody or under arrest or even issued any citations. (Def.'s 56.1 ¶¶ 114, 168-69.) Smith also has no claim as it is undisputed that he was issued a misdemeanor information and desk appearance ticket that clearly set forth the charges against him. (Ex. CC;

[7] A plaintiff may also bring an equal protection claim: (1) where a law or policy expressly classifies persons on the basis of race, (2) where a facially neutral law or policy is applied in an intentionally discriminatory manner, or (3) where a facially neutral statute or policy has an adverse effect and was motivated by discriminatory animus. Brown v. Oneonta, 221 F.3d 329, 337 (2d Cir.2000) (citations omitted). The record does not support an equal protection claim on any of these grounds.

Ex. FF.) Smith also testified that the desk sergeant advised him what charges were being brought against him. (Ex. R at p. 50.) Moreover, the charges against Smith were dismissed, evidencing that he had sufficient notice of the charges against him and was able to adequately defend himself. See Longinott, 2012 WL 1392579, at *5; Romero v. Napoli, No. 08 Civ. 8380(CM)(HBP), 2009 WL 212415, at *3 (S.D.N.Y. Jan. 29, 2009); Hagan, 523 F. Supp. at 628. The Court should dismiss these claims.

## POINT VIII

## THERE IS NO EVIDENCE TO SUPPORT PLAINTIFFS' CONSPIRACY CLAIMS

The Court should dismiss plaintiffs' § 1985 conspiracy claim.[8] To recover on a § 1985(3) conspiracy claim, the plaintiff must show a conspiracy; for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; an act in furtherance of the conspiracy; whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen. Moody v. Town of Greenburgh, No. 09-Civ-6579 (GAY), 2012 WL 1174754, at *5 (S.D.N.Y. Apr. 9, 2012) (quoting Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007)). There must also be "some racial or otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Cine SK8, Inc., 507 F.3d at 791.

"[T]he defining element of a conspiracy – a plurality of actors committed to a common goal – is not satisfied by joint action . . . of a single entity." Frooks v. Town of Cortlandt, 997 F. Supp. 438, 456 (S.D.N.Y. 1998) (citation omitted). Thus, the intra-corporate conspiracy doctrine provides that agents and employees of a single municipal entity, such as a police department,

---

[8] Section 1985(1) is applicable only to conspiracies to prevent persons from holding office or performing official duties while § 1985(2) creates a cause of action only against persons who conspire to obstruct justice or intimidate litigants, witnesses, or jurors. 42 U.S.C. § 1985. There is no evidence to support claims under these sections. Accordingly, defendants presume that plaintiffs' claims are pursuant to § 1985(3) alleging a conspiracy to deprive them of the equal protection of the laws.

each acting within the scope of his employment, are legally incapable of conspiring together. Hartline v. Gallo, 546 F.3d 95, 99 n.3 (2d Cir. 2008); Tribie, 2012 WL 246619, at *10; Cruz v. Reilly, No. 08-CV-1245 (JFB)(AKT), 2009 WL 2567990, at *6 (E.D.N.Y. Aug. 18, 2009).

It is well settled that claims of conspiracy containing only "conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights" are insufficient. Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011); Brito v. Arthur, 403 F. App'x 620, 621 (2d Cir. 2010); Green v. City of Yonkers, N.Y., No. 10 Civ. 3653 (JFK), 2012 WL 554453, at *5 (S.D.N.Y. Feb. 21, 2012). There is no § 1985 conspiracy without an underlying violation of civil rights. See O'Bradovich v. Vill. of Tuckahoe, 325 F. Supp. 2d 413, 426 (S.D.N.Y. 2004).

There is no evidence suggesting, and plaintiffs did not allege, that the NRPD officers conspired with any private parties or individuals from any other entities outside of the City. The NRPD officers are legally incapable of conspiring amongst themselves as a matter of law. Moreover, as set forth above, there is absolutely no evidence that the complained of actions deprived plaintiffs of equal protection or were the result of any racial or class-based animus. There is also no evidence supporting the existence of any conspiracy. Plaintiffs' § 1986 claim must be dismissed absent a valid § 1985 claim. See Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996). Further, this claim carries a one-year statute of limitations and is time-barred. See 42 U.S.C. § 1986.

## POINT IX

## THERE IS NO EVIDENCE TO SUPPORT SMITH'S CLAIM FOR DENIAL OF MEDICAL TREATMENT

Although not asserted as a separate cause of action, Smith seems to claim that he was denied proper medical treatment. (Ex. A ¶ 41.) Arrestees are protected from deliberate indifference to serious medical needs by the Due Process Clause of the Fourteenth Amendment.

Shankle v. Andreone, No. 06-CV-487 (NG)(LB), 2009 WL 3111761, at *6 (E.D.N.Y. Sept. 25, 2009) (citing Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009)).  "To survive a motion for summary judgment on this claim, plaintiff must demonstrate a genuine issue of material fact concerning whether the arresting officers disregarded a risk of harm to the plaintiff of which the arresting officers were aware."  Id.  The undisputed evidence contradicts this claim.

"The deliberate indifference standard embodies both an objective and a subjective prong."  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  Thus, Smith must show that he had a "serious medical condition" and that it was met with "deliberate indifference."  Caiozzo, 581 F.3d at 72 (quoting Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000)); Elliott v. Cnty. of Monroe, 115 F. App'x 497, 498-99 (2d Cir. 2004); Hathaway, 37 F.3d at 66.  A "serious medical condition" is a "condition of urgency, one that may produce death, degeneration, or extreme pain."  Hathaway, 37 F.3d at 66 (citation omitted).  More than discomfort or minor injury is required for a plaintiff to demonstrate a serious medical need.  Berdugo v. City of New York, No. 03 Civ. 7319(HB), 2004 WL 1900357, at *4 (S.D.N.Y. Aug. 24, 2004).  An officer acts with the requisite deliberate indifference when that officer "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Cuoco, 222 F.3d at 106-07 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Here, Smith did not alert the Detectives to any injuries at the scene, and they did not observe Smith to be injured.  (Def.'s 56.1 ¶ 171-72.)  When he arrived at headquarters, Smith requested medical attention.  (Id. ¶ 174.)  A police officer sent for an ambulance.  (Id. ¶ 176.)  Sgt. Fagan examined Smith's mouth, but did not observe any injuries.  Nevertheless, he sent for

an ambulance. (Id. ¶¶ 177-78.) An ambulance arrived about an hour after Smith was brought to the police station and transported him to the hospital for treatment. (Id. ¶¶ 179-81.)

Smith testified that he was not in "severe pain" on the night of the incident. (Id. ¶ 175.) The examining doctor did not observe any injuries and advised Smith that his teeth were loose and would "tighten up." (Id. ¶¶ 181-82.) The bleeding stopped on its own. (Id. ¶ 183.) Smith did not see a dentist for several days. (Id. ¶ 187.) The dentist recommended that he see an oral surgeon, but he never did. (Id. ¶¶ 187-88.) Smith did not lose any teeth. (Id. ¶ 184.) Smith testified that he is no longer in pain and his teeth are now normal. (Id. ¶¶ 185, 189.)

Smith's own admissions and actions demonstrate that he was not seriously injured. See Nance v. N.Y.C. Police Dep't ex rel. McKay Chung, No. 01CV424 (JB)(JMA), 2003 WL 1955164, at *5 (E.D.N.Y. Apr. 24, 2003) (finding injury "not serious" as evidenced by failure to seek medical care). Further, the record establishes that the NRPD was not deliberately indifferent to Smith's claimed injuries as he was provided prompt medical treatment. Shankle, 2009 WL 3111761, at *6 (dismissing claim where officers called ambulance for plaintiff who was transported to hospital for treatment within an hour) (citing Basnight v. Rossi, No. 97-CV-1312, 2003 WL 722810, at *2 (E.D.N.Y. March 4, 2003) (dismissing deliberate indifference claim where plaintiff received treatment within four hours of arrest); Perkins v. Brown, 285 F. Supp. 2d 279 (E.D.N.Y. 2003)).

## POINT X

## THERE IS NO EVIDENCE TO SUPPORT ANY OF PLAINTIFFS' CLAIMS AGAINST THE CITY

All of plaintiffs' § 1983 claims against the City should be dismissed due to the complete lack of evidence demonstrating that their alleged injuries were the result of a City policy.[9] "[A]

[9] Smith does not assert an excessive force claim against the City under § 1983. (Ex. A ¶ 78.) Nevertheless, as set forth below, such a claim would fail.

municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Velasquez, 2012 WL 232432, at *5 (emphasis in original) (quoting Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978)); see also Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Plair v. City of New York, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011). Rather, a plaintiff must establish that the municipality itself was at fault. See Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985).

It is only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694; see also Brown v. City of New York, 306 F. Supp. 2d 473, 477 (S.D.N.Y. 2004); City of Canton v. Harris, 489 U.S. 378, 385 (1989). Likewise, "there can be no liability against [a municipality] under § 1985 absent a municipal policy, custom or practice." Brown, 306 F. Supp. 2d at 478. A plaintiff "may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference." Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995). "[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Id.

An isolated incident, especially absent action by policy-makers, will not suffice to establish a municipal policy or custom. See Tuttle, 471 U.S. at 823-24; Bryant v. Maffucci, 923 F.2d 979, 986 (2d Cir. 1991). The identified policy or practice must also be the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694; Gentile v. Cnty. of Suffolk, 926 F.2d 142, 157 (2d Cir. 1991). Of course, there is no Monell claim absent an underlying

constitutional violation.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Lawrence v. Town of Brookhaven Dep't of Hous., 393 F. App'x 791, 794 (2d Cir. 2010).

A plaintiff must provide more than conclusory allegations of an official custom or practice to impose § 1983 liability on a municipality.  See Bernstein, 2007 WL 1573910, at *8; Claudio v. City of New York, 423 F. Supp. 2d 170, 172 (S.D.N.Y. 2006).  Rather, a Monell claim must be supported by "specific facts that would at least circumstantially support the inference of the existence of such policies."  Prophete v. City of New York, No. 07 CV 3061 (NG) (LB), 2008 WL 4185876, at *6 (E.D.N.Y. Sept. 9, 2008) (citing Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir.1983)).  "Boilerplate assertions that a municipality has a custom or policy resulting in a constitutional deprivation of the plaintiff's rights are insufficient."  Bohmer v. New York, No. 06 Civ. 11370(KTD), 2011 WL 2651872, at *3 (S.D.N.Y. June 16, 2011); Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993), overruled on other grounds, Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993).

The failure to train or supervise its employees may be the basis of § 1983 liability against a municipality only in "limited circumstances."  Harris, 489 U.S. at 387.  A plaintiff must establish that "the failure to train amounts to deliberate indifference to the rights of persons with whom the [official] will come into contact."  Id. at 388; see also Neighbour v. Covert, 68 F.3d 1508, 1512 (2d Cir. 1995).  A claim of municipal negligence is insufficient; the municipality must act with "deliberate indifference" to the "known or obvious consequences" of its actions. Brown, 520 U.S. at 407.  "[C]onclusory allegations that a municipality failed to train and supervise its employees are insufficient to state a Monell claim."  Davis v. City of New York, No. 07 Civ. 1395 (RPP), 2008 WL 2511734 at *6 (S.D.N.Y. June 19, 2008); see also Dwares, 985 F.2d at 100; Santos v. N.Y.C., No. 11 Civ. 0291 (VM), 2012 WL 843740, at *3 (S.D.N.Y.

Mar. 6, 2012); McCray v. City of New York, No. 03 Civ. 9685 (DAB), 2007 WL 4352748, at *27 (S.D.N.Y. Dec. 11, 2007).

No evidence supports § 1983 liability against the City. There is no evidence showing that the alleged wrongs of which plaintiffs complain resulted from any City policies or the actions of any City policymakers; plaintiffs do not point to any. Instead, plaintiff points to nothing more than an isolated instance of allegedly unlawful conduct by NRPD police officers. This is patently insufficient to hold the City liable.

Plaintiffs' Monell claims are based only on alleged inadequate training, supervision, and discipline. (Ex. A ¶¶ 72, 77.) The evidence destroys this claim. According to the undisputed evidence, Det. Pastore was a police officer for 22 years and Det. has been a police officer for 19 years. (Def.'s 56.1 ¶¶ 27, 30, 31.) Det. Pastore was a detective for 15 years, and Det. O'Rourke has been a detective for nine years. (Id. ¶¶ 28, 32.) Det. Pastore worked in the narcotics unit for 14 years and Det. O'Rourke has specialized in drug investigations for nine years. (Id. ¶¶ 29, 33.) Det. O'Rourke has made hundreds of arrests throughout his career. (Id. ¶ 43.) Both Detectives have received numerous awards and commendations throughout their careers. (Id. ¶ 44.)

Both Detectives were trained in the police academy. (Id. ¶ 35.) They received training in the penal law, police tactics, and constitutional law, among various other things. (Id. ¶ 36.) They also received regular in-service training throughout their careers. (Id. ¶ 37.) They received yearly training on NRPD rules and regulations and the laws and participated in "numerous classes" on penal law, criminal procedure law, and vehicle and traffic law. (Id. ¶¶ 38, 39.) They were trained on probable cause, stopping vehicles, and arrest procedure and received training in search and seizure procedures specific to drug investigations. (Id. ¶¶ 40, 41.) Det. O'Rourke also received training in dealing with confidential informants and had experience dealing with

them prior to the incident. (Id. ¶¶ 42, 53.) There is no evidentiary basis for holding the City liable for inadequate training of the highly experienced and distinguished Detectives.

There is no basis for Monell claims against the City for inadequate supervision and discipline. Both Sgt. Fagan and Lt. Robinson investigated Cooper's civilian complaint against Det. O'Rourke. (Id. ¶¶ 223-27.) They both interviewed Cooper and the Detectives. (Id. ¶¶ 222, 228-32.) Lt. Robinson looked at photographs Cooper had taken of her car. (Id. ¶ 228.) Lt. Robinson partially substantiated Cooper's complaint with respect to the allegation that items were not returned to her glove compartment. (Id. ¶ 235.) Both Lt. Robinson and Sgt. Olszewski reprimanded the Detectives. (Id. ¶¶ 239-40.) Lt. Robinson subsequently informed Cooper that her complaint was partially substantiated and that disciplinary action was taken. (Id. ¶ 237.) Lt. Robinson logged Cooper's complaint and the disciplinary action taken. (Id. ¶ 241.)

Both Sgt. Fagan and Lt. Robinson investigated Smith's complaint. (Id. ¶¶ 243, 249.) They both interviewed Cooper, Smith, and the Detectives. (Id. ¶¶ 244, 248, 250-51.) Lt. Robinson also reviewed Smith's statement, the police reports, Smith's x-rays and paperwork, the confidential informant information, and Sgt. Fagan's report. (Id. ¶¶ 248, 250, 252, 253.) Neither Sgt. Fagan nor Lt. Robinson was able to substantiate Smith's complaint of excessive force. (Id. ¶¶ 247, 254.) Lt. Robinson informed Smith of the disposition of his complaint. (Id. ¶ 257.) Smith's complaint was documented. (Id. ¶ 256.) Lt. Robinson also investigated Smith's complaint that his power saw was seized and subsequently returned it to Smith. (Id. ¶¶ 259-63.) There is no evidence suggesting that the City should have been aware that the Detectives were prone to violating the rights of citizens. In fact, Lt. Robinson testified that he is not aware of any

other complaints against Det. O'Rourke. (Id. ¶ 258.) Accordingly, the Court should dismiss the City from this action.[10]

## POINT XI

### ALL OF PLAINTIFFS' CLAIMS AGAINST DETECTIVE PASTORE SHOULD BE DISMISSED

The Court should dismiss Det. Pastore from this action because there is no evidence demonstrating that he was personally involved in the acts of which plaintiffs complain. See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004). Det. O'Rourke got the phone call from the informant (Def.'s 56.1 ¶ 88), who was Det. O'Rourke's informant. (Id. ¶ 89.) Det. Pastore did not speak with the informant. (Id. ¶ 95.) Det. O'Rourke paid the informant. (Id. ¶¶ 92, 109.) Det. O'Rourke drove the police vehicle. (Id. ¶ 104.) Det. O'Rourke decided to stop Cooper's car, (id. ¶ 108), and did so. (Id. ¶ 106.)

Det. O'Rourke handcuffed and searched Smith. (Id. ¶¶ 122-23.) Only Det. O'Rourke was involved in the struggle with Smith and allegedly punched and choked him. (Id. ¶¶ 131-32.) Det. Pastore did not witness the struggle and was not involved in it. (Id. ¶¶ 132, 133.) He was speaking with Cooper during the struggle. (Id. ¶ 134.) He did not punch or choke Smith. (Id. ¶ 137.) He did not witness Det. O'Rourke punch Smith. (Id. ¶ 140.)

Det. Pastore saw his partner and Smith go to the ground, and went over to them. (Id. ¶ 143.) Plaintiff testified that Det. Pastore helped him off the ground and stopped Det. O'Rourke from allegedly choking him. (Id. ¶¶ 144-45.) Plaintiffs admit that Det. Pastore did not use excessive force on them. (Id. ¶¶ 149, 170.) In fact, Smith testified that Det. Pastore did not do anything wrong and also that Det. O'Rourke was the only NRPD officer who allegedly

[10] The uncontroverted evidence also demonstrates that Lt. Robinson was not inadequately trained and properly investigates all civilian complaints. (See Def.'s 56.1 ¶¶ 208-21.)

mistreated him. (Id. ¶¶ 150-51.) Smith conceded that his claims are only against Det. O'Rourke. (Id. ¶ 152.) Neither of the Detectives searched Cooper's person. (Id. ¶¶ 153-54.) Det. O'Rourke searched Cooper's vehicle. (Id. ¶¶ 124-26, 156.) Det. Pastore did not participate in the search of the vehicle. (Id. ¶ 159.)

Det. O'Rourke went to the District Attorney's Office and provided information regarding Smith's arrest. (Id. ¶¶ 197-98.) Det. Pastore did not speak to the D.A.'s office or provide any information to the prosecutor regarding the incident. (Id. ¶¶ 199-200.) Det. O'Rourke was the complaining witness against Smith and signed the misdemeanor information. (Id. ¶ 203.) Det. Pastore did not participate in drafting the criminal complaint. (Id. ¶ 204.) The undisputed evidence demonstrates that Det. Pastore was not personally involved in the stop or search of Cooper's vehicle or person, the arrest or search of Smith, or the filing of criminal charges against Smith. Accordingly, the Court should dismiss him from the case.

## POINT XII

## THE DETECTIVES ARE ENTITLED TO QUALIFIED IMMUNITY

The Detectives are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (citation omitted). Qualified immunity is "an *immunity from suit* rather than a mere defense to liability . . . [and] is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original).

"[A] police officer is entitled to qualified immunity if it was 'objectively reasonable' for the officer to believe that no rights were being violated by his conduct." Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 424 (S.D.N.Y. 2002) (citation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" al-Kidd, 131 S. Ct. at 2083 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "Officials are entitled to qualified immunity when their decision was reasonable, even if mistaken." Castro v. United States, 34 F.3d 106, 112 (2d Cir. 1994); see also al-Kidd, 131 S. Ct. at 2085; Butz v. Economou, 438 U.S. 478, 507 (1978).

In the context of a purported illegal search, "[t]he relevant question . . . is . . . whether a reasonable officer could have believed [the] search to be lawful, in light of clearly established law and the information the searching officers possessed." Washpon v. Parr, 561 F. Supp. 2d 394, 404 (S.D.N.Y. 2008) (quoting Anderson, 483 U.S. at 641); Ehrlich v. Town of Glastonbury, 348 F.3d 48, 60 (2d Cir. 2003). With regard to arrests, "[a]n officer is entitled to qualified immunity if there is arguable probable cause, which exists if it was objectively reasonable for the officer to believe that there was probable cause, or if officers of reasonable competence could disagree as to the existence of probable cause." Morales v. City of New York, 209 F. App'x. 75, 76 (2d Cir. 2006) (citing Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)). "Probable cause exists given reasonably trustworthy information that would lead a person of reasonable caution to believe a crime has occurred." Id. (citing Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000)). The Court's focus is on the facts known to the officer at the time of the arrest. Brewton, 550 F. Supp. 2d at 367.

The Detectives did not violate any of plaintiffs' clearly established constitutional rights. Quite the contrary, well-established law permitted the stop, arrest, and search of plaintiffs under the undisputed circumstances of this case. Even if the Detectives were mistaken, it was objectively reasonable for them to believe that their conduct did not violate any of plaintiffs' rights. As set forth above, the undisputed facts demonstrate that the decision to stop Cooper's vehicle was based upon reasonable suspicion, *i.e.*, a tip from a past proven-reliable confidential informant, and was, therefore, reasonable. There was also probable cause to arrest Smith, who admittedly possessed marijuana, and to subsequently search him, Cooper, and Cooper's vehicle.[11]

**POINT XIII**

**PLAINTIFF'S STATE LAW CLAIMS ARE TIME-BARRED**

Plaintiffs assert state law tort claims against the City and the Detectives arising out of the November 1, 2008 incident.[12] They are barred by the statute of limitations for claims against municipalities and/or the failure to comply with the state notice of claim requirements.

New York General Municipal Law requires a plaintiff to serve a notice of claim prior to filing a lawsuit against a municipality that asserts state law tort claims. N.Y. Gen. Mun. Law §§ 50-e, 50-i. The notice of claim must set forth the "nature of the claim." N.Y. Gen. Mun. Law § 50-e(2). "Causes of action for which a notice of claim is required and are not listed in the plaintiff's original notice of claim may not be interposed." Mazzilli v. City of New York, 154 A.D.2d 355, 357 (2d Dep't 1989). "The notice of claim requirements are strictly construed, and

[11] For the same reasons, the Detectives are also entitled to immunity on the state law claims. See Jones v. Parmley, 465 F.3d 46, 63 (2d Cir. 2006) (noting New York common law "grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without reasonable basis").

[12] Plaintiffs only assert state law claims for the alleged unlawful stop, detention, interrogation, and search. (Ex. A ¶¶ 50, 55, 60, 67.) They do not assert state law claims for excessive force, false arrest, or malicious prosecution. (Id.) Regardless, for the reasons articulated below, such claims would fail.

a plaintiff's failure to comply with the mandatory New York statutory notice-of-claim requirements generally results in dismissal of his claims." Smith v. City of New York, No. 04 Civ. 3286 (TPG), 2010 WL 3397683, at *15 (S.D.N.Y. Aug. 27, 2010).

The statute of limitations for tort claims against municipalities is one-year and ninety-days. N.Y. Gen. Mun. Law § 50-i(1). Claims for unlawful search and seizure accrue when the acts occurred. Tellier v. Krimmer, No. CV 96-1000 (RJD), 1996 WL 518108, at *1 (E.D.N.Y. Sept. 4, 1996). A malicious prosecution claim accrues on the date that the criminal proceeding is terminated in the plaintiff's favor. Harris v. Town of Islip Hous. Auth., 825 F. Supp. 2d 370, 375 (E.D.N.Y. 2011) (citation omitted). At the latest, a claim for false arrest or false imprisonment under New York law accrues when the confinement terminates. Id. (citation omitted).

Although Smith does not assert a state law malicious prosecution claim in the complaint, even construing the complaint liberally to assert one, it fails as Smith's notice of claim does not assert a claim for malicious prosecution. (Ex. C.) He filed the notice of claim before the charges against him were dismissed. Accordingly, this Court would not have subject matter jurisdiction over such a claim. See Anderson v. City of New York, 817 F. Supp. 2d 77, 99 (E.D.N.Y. 2011) (dismissing common law malicious prosecution claim for failure to serve notice of claim); Brogdon, 200 F. Supp. 2d at 428 (same).

Any state law claims asserted by plaintiffs are time-barred. The stop and search of Cooper's vehicle and search and arrest of Smith incident occurred on November 1, 2008. The charges against Smith were dismissed on March 11, 2009. (Ex. K.) This action was not filed until January 5, 2011. Thus, all state law claims should be dismissed against all defendants.[13]

[13] To the extent that plaintiffs assert a state law claim against the City for negligent training and supervision, (Ex. A ¶¶ 75, 80), it should also be dismissed as untimely. Such a claim is also barred by the existence of probable cause. See Kurschus v. PaineWebber, Inc., 16 F. Supp. 2d 386, 397 (S.D.N.Y. 1998).

## POINT XIV

## THE EVIDENCE DOES NOT SUPPORT AN AWARD OF PUNITIVE DAMAGES

Plaintiffs are not entitled to punitive damages. The City is immune from punitive damages. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Ivani Contr. Corp. v. City of New York, 103 F.3d 257, 262 (2d Cir. 1997); Sharapata v. Town of Islip, 56 N.Y.2d 332, 338-39 (1982). Plaintiffs cannot recover punitive damages under state law, as they may not assert any state law claims. Moody, 2012 WL 1174754, at *5. There is also no evidence that the Detectives' conduct was driven "by evil motive or intent" or by "reckless or callous indifference" to the rights of others. Ehrlich, 348 F.3d at 52 (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)); Mathie v. Fries, 121 F.3d 808, 815 (2d Cir. 1997).

## CONCLUSION

For all of the foregoing reasons, this Court should grant summary judgment in their favor, together with such other relief as this Court deems just, equitable, and proper.

Dated: Westbury, New York
May 18, 2012

SOKOLOFF STERN LLP
Attorneys for Defendants

By: Brian S. Sokoloff
Mark A. Radi
355 Post Avenue, Suite 201
Westbury, New York 11590
(516) 334-4500
Our File No. 110003