UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMEY COOPER and GREGORY SMITH,

                       Plaintiffs,

        - against -

CITY OF NEW ROCHELLE, DETECTIVE
MICHAEL O'ROURKE, individually and in his
capacity as a member of the City of New Rochelle
Police Department, DETECTIVE JOHN PASTORE,
individually and in his capacity as a member of the
City of New Rochelle Police Department, POLICE
OFFICERS JOHN DOE NUMBERS ONE
THROUGH FIVE (fictitious names whose actual
names are presently unknown), individually and in
their capacity as members of the City of New Rochelle
Police Department, POLICE OFFICER JANE DOE
(a fictitious name whose actual name is presently
unknown), individually and in her capacity as a
member of the City of New Rochelle Police
Department, and DETECTIVE JOHN DOE (A
fictitious name whose actual name is presently
unknown), individually and in his capacity as a
member of the City of New Rochelle Police
Department,

                       Defendants.

11 Civ. 69 (LMS)

DECISION AND ORDER

Lisa Margaret Smith, U.S.M.J.

      Plaintiffs Amey Cooper and Gregory Smith commenced this action against Defendants

City of New Rochelle, Detective Michael O'Rourke, Detective John Pastore, Police Officers

John Doe Numbers 1-5, Police Officer Jane Doe, and Detective John Doe, asserting federal

claims for unreasonable search and seizure, false arrest, malicious prosecution, excessive force,

conspiracy under 42 U.S.C. § 1985, violations of the right to procedural and substantive due

process, violation of the right to equal protection, violation of Plaintiffs' Sixth Amendment right

to be informed of the accusations against them, and <u>Monell</u> liability, and state law claims for unlawful stop, detention, interrogation, and search.[1]  Docket # 1.  Defendants now move for summary judgment on all of Plaintiffs' claims, except for Smith's § 1983 excessive force claim against O'Rourke, pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Docket # 19.  For the reasons that follow, Defendants' motion for summary judgment is granted in part and denied in part.

## BACKGROUND

The following facts relevant to the disposition of the motion are undisputed unless otherwise noted.

On November 1, 2008, Smith woke up and walked from Mount Vernon to the Bronx to get breakfast at McDonald's.  Defendants' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Defs.' 56.1") (Docket # 21) ¶ 54.  After leaving McDonald's, Smith ran into "Rude Boy," a drug dealer, and purchased two bags of marijuana from him.  <u>Id.</u> ¶¶ 55-58.  Smith then went to his deceased father's apartment in New Rochelle to clean it out and spent a few hours there.  <u>Id.</u> ¶¶ 59-60; <u>see</u> Radi Decl. (Docket # 20) Ex. L at 73-74.  Smith left his father's apartment building around 8:30 p.m.  Defs.' 56.1 ¶ 61.

Cooper's mother lived in the same apartment building as Smith's father, and Cooper was also at the apartment building on November 1, 2008.  <u>Id.</u> ¶¶ 62-63.  Smith saw Cooper as he was leaving and asked if she could give him a ride to the deli and then to Mount Vernon.  <u>Id.</u> ¶ 64.  Cooper, who drove a tan Jeep Grand Cherokee, agreed to give Smith a ride.  <u>Id.</u> ¶¶ 65-66.  Smith placed some kitchen utensils and a brand new Dewalt power saw in the trunk of Cooper's

---

[1] Arguably, the Complaint asserts state law claims for negligent training and supervision against the City of New Rochelle as well.  <u>See</u> Compl. ¶¶ 75, 80.

vehicle. Id. ¶ 67. Smith got into the front passenger seat of Cooper's Jeep at about 9:00 p.m. Id. ¶ 68. Cooper stopped at the deli at the corner of Horton Avenue and Brook Street. Id. ¶ 69. Cooper parked her vehicle across the street from the deli and waited in the vehicle while Smith went inside. Id. ¶¶ 70-71. Smith bought two cigars at the deli and then walked over to a bar on the same block. Id. ¶¶ 72-73. Smith saw people who he knew, and who he knew were drug dealers, outside the bar and spoke to them. Id. ¶¶ 74-76. Smith saw "Moore," who he knew was a drug dealer, outside the bar and spoke and waved to him. Id. ¶¶ 77-78. Smith got back into Cooper's vehicle at about 9:10 p.m. Id. ¶ 79. At that time, Smith had two cigars and two plastic bags of marijuana in his shirt pocket. Id. ¶ 80. Cooper began driving toward Mount Vernon. Id. ¶ 81. First, Cooper made a left onto Brook Street from Horton Avenue; then she made a right turn onto Lincoln Avenue. Id. ¶ 82. Cooper drove six or seven blocks on Lincoln Avenue before she noticed flashing police lights behind her. Id. ¶ 83. Cooper pulled over her vehicle to the right side of the street between Oakdale Avenue and Storer Avenue. Id. ¶ 84. An unmarked police vehicle pulled up behind Cooper's vehicle. Id. ¶ 85.

That night, Detectives O'Rourke and Pastore were conducting surveillance in the area of Horton Avenue and Brook Street in New Rochelle, which was an area known for drug activity. Id. ¶¶ 86-87. While in the area, O'Rourke got a call on his cell phone from a confidential informant. Id. ¶ 88. The confidential informant was registered to O'Rourke and had provided O'Rourke information in the past. Id. ¶¶ 89, 91. Pastore also knew the confidential informant. Id. ¶ 90. O'Rourke had used this confidential informant more than ten times in the past and had paid the informant each time with New Rochelle Police Department ("NRPD") money. Id. ¶ 92. The confidential informant called O'Rourke whenever he had information. Id. ¶ 93. The confidential informant, who only spoke to O'Rourke, said that a man named Gregory Smith

3

purchased and was in possession of crack cocaine at Horton Avenue. Id. ¶¶ 95-96. The confidential informant told O'Rourke that Smith was entering a Jeep. Id. ¶ 97. O'Rourke and Pastore knew Smith's name and face before November 1, 2008, because they had seen him many times in known drug locations throughout their careers. Id. ¶ 101. O'Rourke and Pastore observed Smith walking on Horton Avenue and getting into the front passenger seat of a Jeep Grand Cherokee at the corner of Horton Avenue and Brook Street. Id. ¶ 102. O'Rourke, who was driving, followed the Jeep from Brook Street to Lincoln Avenue. Id. ¶¶ 103-104. O'Rourke and Pastore never lost sight of the Jeep and after a few minutes, pulled it over at Lincoln and Oakdale Avenues. Id. ¶¶ 105-106. O'Rourke stopped the vehicle because the confidential informant told him that Smith was in possession of narcotics. Id. ¶ 107. O'Rourke later paid the confidential informant for the information that he provided on November 1, 2008. Id. ¶ 109.

After stopping Cooper's vehicle, O'Rourke and Pastore approached, wearing their shields around their necks, and identified themselves as police officers. Id. ¶¶ 110-111. Smith recognized O'Rourke and Pastore. Id. ¶ 112. O'Rourke advised Cooper that she did not do anything wrong. Id. ¶ 114. O'Rourke asked Smith his name, and Smith responded. Id. ¶ 115. O'Rourke then asked Smith to exit the vehicle, and Smith did so. Id. ¶¶ 116-117.

According to Defendants, O'Rourke approached Smith's side of the vehicle, and Pastore approached Cooper's side of the vehicle. Radi Decl. Ex. N at 30; Radi Decl. Ex. O at 81-82. O'Rourke told Smith that he was conducting a drug investigation and asked Smith whether he was in possession of any drugs. Defs.' 56.1 ¶¶ 118-119. Defendants contend that Smith replied, "I have some weed in my pocket," and then removed two plastic bags of marijuana from his shirt pocket and handed them to O'Rourke. Id. ¶¶ 120-121. At that point in time, O'Rourke rear handcuffed Smith and told him that he was under arrest. Id. ¶ 122. Once Smith was placed

under arrest, O'Rourke searched him. Id. ¶ 123.

In contrast, Plaintiffs contend that O'Rourke approached Cooper's side of the vehicle, and Pastore approached Smith's side of the vehicle. Radi Decl. Ex. L at 148-149; Radi Decl. Ex. M at 42-43; Radi Decl. Ex. R at 18-19; Radi Decl. Ex. S at 14. O'Rourke asked Cooper for her driver's license, registration, and insurance before asking Smith his name and asking him to exit the vehicle. Radi Decl. Ex. L at 148; Radi Decl. Ex. M at 42-43; Radi Decl. Ex. R at 20; Radi Decl. Ex. S at 14. According to Smith, once he stepped out of the vehicle, Pastore started searching in his pockets and pulled out cigars and the marijuana, at which point in time he was rear handcuffed and walked to the back of the vehicle. Radi Decl. Ex. L at 150-151.[2]

O'Rourke then asked Cooper if he could search the seat in the vehicle where Smith had been sitting, and Cooper said he could. Defs.' 56.1 ¶¶ 124-125. According to Cooper, she first asked O'Rourke whether he needed a search warrant, and O'Rourke replied no. Radi Decl. Ex. M at 54; Radi Decl. Ex. S at 18. O'Rourke searched the areas of the vehicle around Smith's seat. Defs.' 56.1 ¶ 126.[3]

According to Defendants, O'Rourke observed Smith trying to open what turned out to be

---

[2]Plaintiffs' Local Rule 56.1 Statement states that Smith was "immediately placed" in handcuffs when he exited the vehicle, but the testimony is inconsistent on this point. Cooper testified that Smith was immediately placed in handcuffs, Radi Decl. Ex. M at 43, and Smith testified at his 50-h hearing that he was handcuffed by Pastore when he "stepped out of the vehicle," Radi Decl. Ex. R at 29-30. However, Smith also testified at his 50-h hearing that his first contact with Pastore when he exited the vehicle was that Pastore "proceeded to empty my pockets," id. at 24, and Smith subsequently testified at his deposition that he was searched first and handcuffed after the marijuana was found. Radi Decl. Ex. L at 151.

[3]Although Defendants include these facts in their Local Rule 56.1 Statement, Defs.' 56.1 ¶¶ 124-126, O'Rourke testified at his deposition that he conducted a search of the entire interior of the vehicle, with Cooper's consent, only after Smith left the scene. Radi Decl. Ex. O at 129-131.

two small plastic bags of crack cocaine behind his back. Id. ¶ 129.[4]  O'Rourke tried to retrieve

the crack cocaine from Smith, and a struggle ensued. Id. ¶¶ 130-131.  According to O'Rourke,

Smith resisted and pushed, shoved, and kicked him. Id. ¶ 135; see Radi Decl. Ex. O at 106-08.

O'Rourke and Smith ended up on the ground. Defs.' 56.1 ¶ 142.  Pastore saw O'Rourke and

Smith fall to the ground and went over to them. Id. ¶ 143.  According to Pastore, O'Rourke

helped Smith up off the ground. Radi Decl. Ex. N at 40, 44-45.  O'Rourke retrieved two small

plastic bags of crack cocaine from the ground near Smith. Defs.' 56.1 ¶ 146.

     According to Smith, while O'Rourke was searching and questioning him, O'Rourke got

frustrated because Smith was not answering his questions and punched Smith in the mouth. Radi

Decl. Ex. L at 153, 155, 157.  O'Rourke then pushed Smith down onto the hood of the vehicle,

with his forearm under Smith's neck, choking him. Id. at 157-58; see Radi Decl. Ex. M at 56-57.

Smith's mouth was bleeding. Radi Decl. Ex. L at 166-67; Radi Decl. Ex. M at 56.  Pastore and

O'Rourke then lifted Smith up off the hood of the vehicle and placed Smith face down on the

ground, and O'Rourke placed his foot on Smith's back. Radi Decl. Ex. L at 158, 162.  According

to Smith, he was on the ground until other, unidentified police officers arrived, picked him up,

and walked him to a marked police vehicle. Id. at 163.  O'Rourke denies choking, striking,

punching, or kicking Smith. Defs.' 56.1 ¶ 138.  Cooper did not see O'Rourke punch Smith, id. ¶

139, and Pastore did not see O'Rourke punch or choke Smith. Id. ¶ 140.

     Police backup arrived on the scene, and Smith was transported to police headquarters by

NRPD patrol officers. Id. ¶ 148.  Smith denies that he had any cocaine in his possession. Radi

Decl. Ex. L at 153; Radi Decl. Ex. R at 27.

_____

    [4]O'Rourke testified at his deposition that there was only one small plastic bag. See Radi
Decl. Ex. O at 101.

According to Defendants, after Smith left the scene, O'Rourke asked Cooper whether he could search her vehicle, and Cooper did not object. Defs.' 56.1 ¶ 157. O'Rourke claims that he alone searched the entire interior of Cooper's vehicle. Radi Decl. Ex. O at 128, 131; see Radi Decl. Ex. N at 55 (Pastore testified at his deposition that only O'Rourke searched the vehicle). According to Cooper, Pastore had ordered her back into her vehicle during Smith's arrest, Radi Decl. Ex. M at 58-59, but then soon after an unidentified uniform police officer came to Cooper's window and ordered her to give him the keys to the vehicle; Cooper stated that she thought the key "was still sticking out of the ignition." Id. at 59. Cooper testified at her deposition that O'Rourke then ordered her to give him her cell phone, get out of the vehicle, and put her hands on the hood and stay there. Id. at 60. Cooper was then asked by a "short Hispanic detective" her name, her age, and where she worked. Id. O'Rourke then returned and told Cooper that her Jeep was going to be impounded and that she could be charged with loitering. Id. at 61-62. An unidentified uniform female police officer arrived and searched Cooper's person, wallet, and pocketbook, and no contraband was recovered. Defs.' 56.1 ¶¶ 153-155.

According to Cooper, O'Rourke directed at least four unidentified police officers to conduct the search of her vehicle. Radi Decl. Ex. M at 63. The officers removed Cooper's property from the vehicle and put it out on the street and the curb. Id. According to Cooper, O'Rourke insisted that the officers continue searching her vehicle even after they asked to stop because they were not finding any illegal contraband. Id. at 64. It is undisputed that no contraband was found in Cooper's vehicle. Defs.' 56.1 ¶ 158. In the trunk, however, O'Rourke found a brand new Dewalt power saw. Id. ¶ 162. Defendants contend that Cooper told them she was not sure to whom the saw belonged, so they took it and logged it for safekeeping so that they could determine the saw's owner. Id. ¶¶ 163-165. According to Cooper, she told O'Rourke that

7

the saw belonged to Smith.  Radi Decl. Ex. M at 65.  The saw was the only item seized from Cooper's vehicle.  Defs.' 56.1 ¶ 166.

According to Cooper, after O'Rourke searched the trunk, he went to the front of the vehicle where Cooper was standing and told her that he was going to impound the car because they found crack in it.  Radi Decl. Ex. M at 66.  O'Rourke then balled up Cooper's vehicle registration and slammed that and her cell phone on the hood of the vehicle.  Id.  O'Rourke then took Cooper's keys and driver's license and threw them through the window of the Jeep.  Id.  According to Cooper, O'Rourke said, "Here is all your shit.  Go on and get out of here.  We don't want anything, but we will be down next week to see you at the health department."  Id.  O'Rourke added, "By the way, go get your car washed and I hope your kids don't choke on crack."  Id. at 66-67.  Defendants then returned to police headquarters.  Defs.' 56.1 ¶ 167.  According to Cooper, she was left standing in the middle of the street with all of the items removed from her vehicle still in the street and on the curb.  Radi Decl. Ex. M at 67.  Cooper was neither placed under arrest nor issued any citations.  Defs.' 56.1 ¶¶ 168-169.

After arriving at police headquarters, Smith was read his Miranda rights.  Id. ¶ 190.  Sergeant Fagan booked Smith on the charges of tampering with physical evidence, criminal possession of a controlled substance in the seventh degree, unlawful possession of marijuana, and harassment.  Id. ¶ 191.  Smith was notified of the charges against him, told when he needed to appear in court, and issued an appearance ticket.  Id. ¶ 192.  Smith was bailed out for $750 and released from police custody.  Id. ¶ 193.  The crack cocaine and marijuana were entered into evidence, and the saw was vouchered into property.  Id. ¶¶ 194-195.  Laboratory tests confirmed that the two bags of white powder that O'Rourke recovered from Smith held crack cocaine.  Id. ¶ 196.

O'Rourke subsequently went to the prosecutor's office to file charges against Smith. Id. ¶ 197. O'Rourke provided all of the information to the prosecutor; Pastore did not provide any information. Id. ¶¶ 198-199. Smith was charged in a misdemeanor information, which O'Rourke signed as the complaining witness, with obstructing governmental administration in the second degree, criminal possession of a controlled substance in the seventh degree, resisting arrest, and unlawful possession of marijuana. Id. ¶¶ 202-203. Pastore did not participate in drafting the complaint against Smith. Id. ¶ 204. Smith pled not guilty to the charges and requested Mapp, Dunaway, and Huntley hearings. Id. ¶ 205; see Radi Decl. Ex. K. The prosecutor decided not to proceed with the case against Smith based on concerns about producing and potentially damaging the confidential informant, and on March 11, 2009, the case was dismissed. Defs.' 56.1 ¶¶ 206-207.

## DISCUSSION

### I.    Standard for Summary Judgment

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986).

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

Local Civ. R. 56.1(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A trial judge may, therefore, grant summary judgment only if there is

no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law.  See Anderson, 477 U.S. at 250.  The inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact.  Id.

Under Local Rule 56.1(b), the papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.  Local Civ. R. 56.1(b).  Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' "  Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in original).  If the party opposing summary judgment does not respond to the motion, the court may "grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). However, even where the nonmoving party fails to respond to a motion for summary judgment, the court

> may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)) (emphasis in original).

10

Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2. Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

## II. **Defendants' Motion for Summary Judgment**

The Court notes at the outset that Plaintiffs have consented to dismissal of (i) any equal protection claims, (ii) any Sixth Amendment claims, (iii) all conspiracy claims, and (iv) any claims by Smith for denial of medical treatment. See Declaration in Opposition (Docket # 28) ¶ 2. In addition, Plaintiffs have failed to oppose Defendants' motion insofar as it seeks the dismissal of Plaintiffs' Monell claims[5]; any claim by Smith based on the search of Cooper's vehicle[6]; any claim by Smith based on the search of his person subsequent to his arrest; the claims against Pastore for excessive force, malicious prosecution, and the unlawful stop and search of Cooper's vehicle; any due process claim based on the Fifth Amendment; and all of

---

[5]Although Defendants do not move for summary judgment on Smith's § 1983 excessive force claim against O'Rourke, this claim is not also asserted against the City of New Rochelle, see Compl. ¶ 78, and in any event, Defendants' motion for summary judgment seeks dismissal of the Monell claims in their entirety.

[6]It is unclear whether such a claim is asserted in the Complaint, but it would nonetheless fail on the merits. See footnote 18, infra.

11

Plaintiffs' state law claims.[7]  Therefore, Plaintiffs are deemed to have abandoned such claims, and they are hereby dismissed.  See, e.g., Gaston v. City of New York, 851 F. Supp. 2d 780, 796 & n.31 (S.D.N.Y. 2012) (citing cases); Bookman v. Merrill Lynch, No. 02 Civ. 1108, 2009 WL 1360673, at *10 (S.D.N.Y. May 14, 2009).  In light of the dismissal of Plaintiffs' Monell claims, any claims against Defendants O'Rourke and Pastore in their official capacities are dismissed as well.[8]  See, e.g., Ward v. City of New York, No. 08 Civ. 7380, 2010 WL 3629536, at *3 (S.D.N.Y. Sept. 17, 2010) (citing Adler v. South Orangetown Cent. Sch. Dist., 2008 WL 190585, at *12 (S.D.N.Y. Jan. 17, 2008) ("When an official is sued in his or her official capacity, however, a court is to treat that claim as it would treat a claim against the municipality itself.")).[9]

---

[7]In any event, Plaintiffs' state law claims would be dismissed as time-barred. "Under New York law, a notice of claim is a mandatory precondition to bringing a tort claim against a municipality or any of its officers, agents or employees. See N.Y. Gen. Mun. L. §§ 50-e, 50-i(1)(a). A plaintiff must file the notice of claim within ninety days after the claim arises and commence the action within one year and ninety days from the date the cause of action accrued. See id." Hyde v. Arresting Officer Caputo, No. 98 CV 6722, 2001 WL 521699, at *4 (E.D.N.Y. May 11, 2001); see also Warner v. Vill. of Goshen Police Dep't, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003) ("[T]he applicable statute of limitations period under N.Y. Gen. Mun. Law 50-i(1)(c) is one year and ninety days after the happening of the event on which the claim is based."). Plaintiffs timely filed their notices of claim. See Radi Decl. Exs. C & D. However, since all of Plaintiffs' state law claims accrued on November 1, 2008, the date of their encounter with Defendants O'Rourke and Pastore, and the Complaint in this action was not filed until January 5, 2011, over two years later, these claims are all untimely.

[8]In dismissing the Monell claims, the Court sees no need to amend the caption in this case to delete the City of New Rochelle or the references to Defendants O'Rourke and Pastore in their official capacities.

[9]In their reply brief, Defendants contend that Plaintiffs' claims against the unnamed John and Jane Doe Defendants should be dismissed with prejudice because while "plaintiffs had ample time and discovery to identify the 'John and Jane Does,' they failed to do so." Reply Mem. of Law (Docket # 34) at 5 n.6 (citing Coward v. Town & Vill. of Harrison, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009); Keesh v. Artuz, No. 97-CV-8417, 2008 WL 3166654, at *2 (S.D.N.Y. Aug. 6, 2008)). The Court permitted Plaintiffs to file a sur-reply brief, but they did not contest this issue therein. See Pls.' Sur-Reply Mem. of Law (Docket # 38). The Court agrees with Defendants and notes that even if Plaintiffs could amend their Complaint to identify

Moreover, Plaintiffs have failed to provide a proper response to Defendants' Local Rule

56.1 Statement.  Rather, Plaintiffs have objected to numerous paragraphs of Defendants' 56.1

Statement on the grounds that (i) the facts contained therein are not relevant, Plaintiffs' Response

to Defendants' Local Rule 56.1 Statement ("Pls.' 56.1") (Docket # 31) ¶¶ 1-58, 181-189, 196,

208-221, 258; and (ii) Plaintiffs "deny knowledge or information sufficient to form a belief as to

the truth of the allegations" contained in the paragraph in question, Pls.' 56.1 ¶¶ 27-53, 86-95,

---

these defendants, such claims would now be time-barred in light of the three-year statute of limitations applicable to the remaining § 1983 claims, see Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004), and any such claims would not relate back to the original Complaint under Fed. R. Civ. P. 15(c).  See Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 470 (2d Cir. 1995) ("Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.  Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake."), modified, 74 F.3d 1366 (2d Cir. 1996); see also Hyde, 2001 WL 521699, at *3 ("Defendants are correct in asserting that Hyde may not now amend his complaint should he wish to formally add the unidentified police officers as defendants because such amendment would be futile.  The three-year statute of limitations for Hyde's § 1983 claims has run, and the relation-back doctrine, see Fed.R.Civ.P. 15(c), does not apply where, as here, defendants were not originally named because plaintiff did not know their identities.  Accordingly, Hyde's Fourth Amendment claims against the unnamed officers are dismissed.") (internal quotation marks and citations omitted).  As one recent district court decision noted, however, "the Supreme Court's recent decision in Krupski v. Costa Crociere S.P.A., 130 S.Ct. 2485 (2010) has engendered a split in the district courts as to whether Barrow remains good law."  Askins v. City of New York, No. 09 Civ. 10315, 2011 WL 1334838, at *1 n.3 (S.D.N.Y. Mar. 25, 2011) (comparing cases).  Nevertheless, as the Askins court pointed out, "Krupski did not involve the scenario found in John Doe cases in which a plaintiff sues the wrong party at the outset of litigation because he is unaware of the identity of the proper defendant.  Thus, it is at least factually distinguishable from Barrow."  Id.  Because of this factual distinction, the Court finds that Krupski is not controlling in this case and that Barrow would apply to bar any proposed amendment.  See Dominguez v. City of New York, 2010 WL 3419677, at *3 (E.D.N.Y. Aug. 27, 2010) (Krupski did not overturn or limit Barrow and its progeny: "Krupski merely picks up where Barrow left off.  Barrow asked whether a mistake has been committed; Krupski assumes the presence of a mistake and asks whether it is covered by Rule 15(c)(1)(C)(ii).  Therefore, Barrow's holding that a lack of knowledge is not a mistake is still intact.").

99-108, 172, 178, 181, 194-196, 199-201, 204, 206, 208-221, 223, 227, 229-236, 238-241, 243-245, 247, 249-256, 258, 260-262, 264.[10]

"Local Rule 56.1 states that the moving party's 56.1 statement will be deemed to be admitted unless controverted, Rule 56.1(c), and requires that such denials be supported by a specific citation to admissible evidence, Rule 56.1(d). Accordingly, any of the [Defendants'] Rule 56.1 Statements that [Plaintiffs] do not specifically deny – with citations to supporting evidence – are deemed admitted for purposes of [Defendants'] summary judgment motion." Ezagui v. City of New York, 726 F. Supp. 2d 275, 285 n.8 (S.D.N.Y. 2010) (internal quotation marks and citations omitted); see AFL Fresh & Frozen Fruits & Vegetables, Inc. v. DeMar Food Serv. Inc., No. 06 Civ. 2142, 2007 WL 4302514, at *4 (S.D.N.Y. Dec. 7, 2007) ("unsupported denials, without more, cannot create disputes of material fact"). "A nonmovant cannot raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of knowledge and information in part because discovery allows the party opposing summary judgment to obtain the facts necessary to determine whether it must admit or deny them." AFL Fresh & Frozen Fruits & Vegetables, 2007 WL 4302514, at *4 (internal quotation marks and citation omitted); see Ezagui, 726 F. Supp. 2d at 285 n.8 (deeming statements in moving party's Rule 56.1 statement admitted where opposing party responded with assertions that it denied knowledge and information sufficient to form a belief as to the truth of the allegations). "A nonmoving party's failure to respond to a Rule 56.1 statement permits the court

---

[10]Plaintiffs also object to numerous paragraphs of Defendants' Local Rule 56.1 Statement on the ground that the asserted facts are based on evidence, namely, exhibits submitted by Defendants, that are not admissible. Pls.' 56.1 ¶¶ 1-23, 27-44, 96-98, 101-103, 106, 109, 110-152, 178, 181, 194-196, 223, 227, 245, 247, 249. As set forth herein, the Court addresses Plaintiffs' objections with respect to specific exhibits to the extent that such exhibits are material to the Court's decision on the motion.

to conclude that the facts asserted in the statement are uncontested and admissible.  In the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met."  <u>T.Y. v. N.Y.C. Dep't of Educ.</u>, 584 F.3d 412, 418 (2d Cir. 2009) (citations omitted).  Therefore, as further addressed below, Plaintiffs have failed to properly contest numerous facts set forth in Defendants' Local Rule 56.1 Statement, and they are consequently deemed admitted.

Lastly, the Court notes that with respect to the critical paragraphs related to "Smith's Arrest," Pls.' 56.1 ¶¶ 110-152, and "The Search of Cooper's Vehicle," <u>id.</u> ¶¶ 153-170, Plaintiffs fail to provide specific responses to each of the paragraphs set forth in Defendants' Local Rule 56.1 Statement, as required by Local Rule 56.1(b).  Rather, with respect to those paragraphs, Plaintiffs provide a combined general response to Defendants' statements of fact, albeit with citations to record evidence.  "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).  Therefore, with respect to those paragraphs, the Court has taken into account the record evidence to which Plaintiffs cite and considered whether it raises issues of material fact but has otherwise deemed admitted those facts in Defendants' Local Rule 56.1 Statement to which Plaintiffs have failed to respond specifically.

Defendants make several arguments in support of their motion for summary judgment on Plaintiffs' remaining claims against them.  The Court addresses these arguments below.

A.    **Unlawful Stop and Search Claims**[11]

    1.    **The Stop of Cooper's Vehicle**

As the Second Circuit has explained,

> The "[t]emporary detention of individuals during the stop of an
> automobile by the police, even if only for a brief period and for a limited
> purpose, constitutes a 'seizure' of 'persons' within the meaning of [the
> Fourth Amendment]." Whren v. United States, 517 U.S. 806, 809–10, 116
> S.Ct. 1769, 135 L.Ed.2d 89 (1996). An "automobile stop is thus subject to
> the constitutional imperative that it not be 'unreasonable' under the
> circumstances." Id. at 810, 116 S.Ct. 1769; accord Delaware v. Prouse,
> 440 U.S. 648, 650, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In other
> words, "the police can stop and briefly detain a person for investigative
> purposes if the officer has a reasonable suspicion supported by articulable
> facts that criminal activity 'may be afoot,' even if the officer lacks
> probable cause." United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581,
> 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct.
> 1868, 20 L.Ed.2d 889 (1968)).

United States v. Swindle, 407 F.3d 562, 566 (2d Cir. 2005). "Reasonable suspicion requires

more than an inchoate and unparticularized suspicion or hunch. Police must be able to point to

specific and articulable facts which, taken together with rational inferences from those facts,

reasonably warrant [the] intrusion [on a citizen's liberty interest]." United States v. Elmore, 482

F.3d 172, 178-79 (2d Cir. 2007) (alteration in original) (internal quotation marks and citations

omitted). Moreover, "[l]ike probable cause, reasonable suspicion is determined based on the

totality of the circumstances but the likelihood of criminal activity need not rise to the level

required for probable cause, and it falls considerably short of satisfying a preponderance of the

evidence standard." Id. at 179 (internal quotation marks and citation omitted). "Reasonable

---

[11]Insofar as Smith's claim for unlawful stop, detention, and search includes a claim for
unlawful interrogation based on the Fifth Amendment, see Compl. ¶¶ 67-68, Miranda violations
are not actionable under § 1983. See Neighbour v. Covert, 68 F.3d 1508, 1510 (2d Cir. 1995)
(per curiam) (The "remedy for a Miranda violation is the exclusion from evidence of any
ensuing self-incriminating statements. The remedy is not a § 1983 action.") (citations omitted).

suspicion may be based upon information from a confidential informant so long as the tip bears

sufficient 'indicia of reliability.' " Id. (quoting Adams v. Williams, 407 U.S. 143, 147 (1972)).

"[C]ourts must assess whether an informant's tip establishes reasonable suspicion under the

totality of the circumstances approach" as articulated in Illinois v. Gates, 462 U.S. 213 (1983).

Id. "Although in Gates the Supreme Court abandoned the rigid two-pronged test of Aguilar v.

Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393

U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the informant's 'basis of knowledge' and

'veracity' (i.e., how he [or she] knows and why we should believe him [or her]) remain highly

relevant to a determination of either probable cause or reasonable suspicion." Id. (citing

Alabama v. White, 496 U.S. 325, 328-29 (1990)).  "Even a tip from a completely anonymous

informant—though it will seldom demonstrate basis of knowledge and the veracity of an

anonymous informant is largely unknowable—can form the basis of reasonable suspicion or

probable cause if it is sufficiently corroborated." Id. (citation omitted).  "Where informants are

known, however, a lesser degree of corroboration is required." Id. at 180 (citations omitted).

In this case, Defendants set forth the following facts in their Local Rule 56.1 Statement

with regard to the confidential informant:  that on November 1, 2008, they were conducting

surveillance in the area of Horton Avenue and Brook Street in New Rochelle; that the area was

known for drug activity; that while in the area, O'Rourke received a call on his cell phone from a

past proven reliable confidential informant; that the confidential informant was registered to

O'Rourke and that Pastore knew the confidential informant; that O'Rourke had received

information from this confidential informant in the past and had used this informant more than

ten times in the past, personally paying him each time with NRPD money; that the confidential

informant called O'Rourke whenever he had information; and that Pastore was present when

O'Rourke received the call from the confidential informant but did not speak to the informant.
Defs.' 56.1 ¶¶ 86-95.

Defendants set forth the following additional facts with regard to the confidential
informant's tip:  that the confidential informant said that a male named Gregory Smith purchased
and was in possession of crack cocaine at Horton Avenue[12]; that the confidential informant said
that Smith was entering a Jeep; that prior to November 1, 2008, Defendants knew Smith's name
and face since they had seen him many times in known drug locations throughout their careers;
that Defendants observed Smith walking on Horton Avenue and entering the front passenger seat
of a Jeep Grand Cherokee at the corner of Horton Avenue and Brook Street; that Defendants
followed the Jeep from Brook Street to Lincoln Avenue; that Defendants never lost sight of the
Jeep; that O'Rourke, who was driving, followed the Jeep for a few minutes and pulled it over at
Lincoln Avenue and Oakdale Avenue minutes after Smith had entered; and that O'Rourke
stopped the Jeep because the confidential informant had told him that Smith was in possession of
narcotics.  Defs.' 56.1 ¶¶ 96-107.

Plaintiffs respond to numerous of these factual allegations by "deny[ing] knowledge or

---

[12]Plaintiffs argue that "the sworn testimony of both defendants O'ROURKE and
PASTORE clearly indicate that the *only* information that O'ROURKE received from the
confidential informant prior to stopping COOPER'S veh[i]cle was the vague assertion that
SMITH was 'in possession of narcotics.' "  Pls.' Mem. of Law in Opp. at 6 (Docket # 29)
(emphasis in original).  While O'Rourke testified at his deposition, taken over three years after
the event in question, that the informant told him "that Gregory Smith was in possession of
narcotics," Radi Decl. Ex. O at 59, in his police report completed on November 1, 2008,
O'Rourke noted that the "CI stated a male by the name of Gregory Smith was in possession of
crack cocaine."  Radi Decl. Ex. T.  Moreover, during O'Rourke's deposition, he testified as
follows: "Q. . . . So if you wrote in your report that the CI stated a male by the name of Gregory
Smith was in possession of crack-cocaine that would be incorrect?  A.  No.  Q.  Okay.  So if you
wrote that on the same day, November 1st, 2008, that that's what the CI said is that more than
likely what the CI said?  A.  Yes."  Radi Decl. Ex. O at 69.

information sufficient to form a belief as to the[ir] truth." Pls.' 56.1 ¶¶ 86-95, 99-107.  Thus,

these factual allegations are deemed admitted.  See AFL Fresh & Frozen Fruits & Vegetables,

2007 WL 4302514, at *4 ("A nonmovant cannot raise a material issue of fact by denying

statements which the moving party contends are undisputed for lack of knowledge and

information in part because discovery allows the party opposing summary judgment to obtain the

facts necessary to determine whether it must admit or deny them.") (internal quotation marks and

citation omitted); Ezagui, 726 F. Supp. 2d at 285 n.8 (deeming statements in moving party's Rule

56.1 statement admitted where opposing party responded with assertions that it denied

knowledge and information sufficient to form a belief as to the truth of the allegations).  In

addition, Plaintiffs contest some of these allegations on the ground that they are not supported by

evidence in admissible form. Pls.' 56.1 ¶¶ 96-98, 101-103, 106.  However, Plaintiffs' challenge

to any statements based on Defendants' Exhibit T, the police report regarding Smith's arrest, see

Pls.' 56.1 ¶¶ 96, 97, 101-103, 106, fails because "a police report . . . [is] admissible as an

exception to the hearsay rule either as a business record under Rule 803(6), Fed.R.Evid., or a

public record under 803(8), Fed.R.Evid." Goldstein v. Laurent, No. 09 Civ. 2437, 2011 WL

3586447, at *4 (S.D.N.Y. Aug. 2, 2011) (citations omitted); see Rodriguez v. Modern Handling

Equip. of N.J., Inc., 604 F. Supp. 2d 612, 623 (S.D.N.Y. 2009) (police report found admissible as

a public record under Fed. R. Evid. 803(8)).[13]  Moreover, to the extent that the police report

---

[13]To establish that certain police records submitted in support of their motion fall within
the business records exception to the hearsay rule, Fed. R. Evid. 803(6), Defendants submit the
Affidavit of Captain Kevin Kealy (Docket # 33-1), which certifies that Radi Decl. Exs. P, Q, T,
V, X, Y, Z, AA, HH, JJ, KK, and LL were "created and kept in the course of the NRPD's
regularly conducted activity" and that it was "the regular practice of the NRPD to create and
keep the[se] documents." Kealy Aff. ¶¶ 3-4.
    Plaintiffs argue in their sur-reply papers that Defendants' reliance on the business records
exception to support the admissibility of the police records cited in Captain Kealy's affidavit is

includes statements made by the confidential informant, such statements are admissible since

Defendants do not offer them for their truth but rather as evidence that the statements were made

and provided Defendants with reasonable suspicion to stop Cooper's vehicle. See, e.g., Richards

v. City of New York, No. 97 Civ. 7990, 2003 WL 21036365, at *6 (S.D.N.Y. May 7, 2003)

("First, each of the police reports offered by defendants . . . is a record of regularly conducted

activities. Such records are admissible pursuant to Fed.R.Evid. 803(6). Moreover, the contents

of the police reports and the other documents, to the extent that they reflect statements made to

police officers or other defendants . . . , are not offered for the truth of the matter asserted but for

the purpose of showing that these statements were made to the officers and provided probable

---

"misplaced" because the affidavit does not establish all of the elements required by Fed. R. Evid.
803(6). Pls.' Sur-Reply Mem. of Law at 2-3 (Kealy's affidavit "do[es] not establish that the
records were made at or near the time by – or from information transmitted by – someone with
knowledge of the statements made therein. Fed. R. Evid. 803(6)(A)."). However, these
documents would nonetheless be admissible both under Rule 803(8) as public records, see
Goldstein, 2011 WL 3586447, at *4; Rodriguez, 604 F. Supp. 2d at 623, and under Rule
902(4)(A), pursuant to which certified copies of public records are deemed self-authenticating.
See Fed. R. Evid. 902(4)(A) ("A copy of an official record – or a copy of a document that was
recorded or filed in a public office as authorized by law – if the copy is certified as correct by:
(A) the custodian or another person authorized to make the certification.").
      Likewise, with respect to Radi Decl. Ex. EE, the Request for Evidence Examination and
Preliminary Report from the laboratory confirming that the white substance recovered from
Smith was cocaine, such exhibit would be admissible under Rule 902(4)(A). The admissibility
of the exhibit is supported by the Affidavit of ADA John Carmody (Docket # 33-3), which
certifies that Radi Decl. Ex. EE is a "true and accurate" copy of a record "maintained as part of
the Westchester County District Attorney's file in the matter of People v. Gregory Smith, New
Rochelle City Court Docket No. 08-2102"; states that it is a record "maintained by [sic] in the
regular practice of the DA's Office"; and declares that the affidavit is based upon Carmody's
"personal knowledge of the regular activities and operations of the DA's Office as an Assistant
District Attorney and Records Access Officer for the DA's Office." Carmody Aff. ¶¶ 3-4, 7. In
any event, Plaintiffs only contest the admissibility of Radi Decl. Ex. EE on the ground that its
factual contents "are neither material or [sic] relevant" to the determination of the motion for
summary judgment. Pls.' Sur-Reply Mem. of Law at 5. However, the laboratory results are
relevant to the extent that they provided a basis for the charge of criminal possession of a
controlled substance in the seventh degree as set forth in the misdemeanor information signed by
O'Rourke. See Radi Decl. Ex. FF.

cause to arrest and prosecute Richards. As they are not offered for the truth of the matter asserted, they do not constitute hearsay as defined in Fed.R.Evid. 801(c).").

Plaintiffs also challenge statements based on Defendants' Exhibit U, a copy of an Assistant District Attorney's handwritten notes, found in the Westchester County District Attorney's file in Smith's criminal case. See Pls.' 56.1 ¶¶ 96, 98; Defs.' 56.1 ¶ 96 ("The informant stated that a male by the name of Gregory Smith purchased and was in possession of crack cocaine at Horton Avenue. (Ex. N at p. 22; Ex. O at pp. 45, 59; Ex. T; Ex. U.)") & ¶ 98 ("The informant described Smith and the Jeep. (Ex. U.)."). Plaintiffs contend that this document does not fall within the business records exception to the hearsay rule, see Pls.' Sur-Reply Mem. of Law (Docket # 38) at 7, and in any event, it contains double hearsay. Id. The Court agrees that an unidentified Assistant District Attorney's notes of statements made presumably by O'Rourke concerning statements made by the confidential informant, as well as describing his encounter with Smith, constitute double hearsay and cannot be considered in deciding this motion. See Rodriguez, 604 F. Supp. 2d at 622 (" 'Double hearsay is not admissible unless each level of hearsay is covered by an exception to the hearsay rule.' ") (quoting Agric. Ins. Co., Inc. v. Ace Hardware Corp., 214 F. Supp. 2d 413, 416 (S.D.N.Y. 2002)). Nonetheless, virtually the same information is contained in Defendants' Exhibit T, the police report, which, as explained above, is admissible. Therefore, the inadmissibility of Defendants' Exhibit U is of no consequence to the resolution of this motion.

The undisputed facts thus establish that Defendants were justified in relying on the confidential informant's tip. Plaintiffs in no way challenge the veracity or reliability of the informant, one whom O'Rourke had used more than ten times in the past and paid with NRPD money and who called O'Rourke when he had information. In this case, it is undisputed that

while Defendants were conducting surveillance in an area known for drug activity, the informant notified O'Rourke not only that Smith had purchased and was in possession of crack cocaine at Horton Avenue, but that Smith was entering a Jeep.  Meanwhile, even though O'Rourke was not required to corroborate his informant's tip, see Elmore, 482 F.3d at 181 ("Where the informant is known from past practice to be reliable, . . . no corroboration will be required to support reasonable suspicion."), Defendants were able to independently corroborate the informant's statements since they knew both Smith's name and what he looked like, and upon receiving the tip, they were able to observe for themselves Smith walking on Horton Avenue and entering a Jeep at the corner of Horton Avenue and Brook Street.  Considering the totality of the circumstances, the confidential informant's tip gave rise to reasonable suspicion to stop Cooper's vehicle.

Accordingly, Defendants are entitled to summary judgment on Plaintiffs' § 1983 claims based on the stop of Cooper's vehicle.[14]

### 2.    The Initial Search of Smith's Person

With respect to the initial search of Smith's person, however, the Court finds that there are genuine issues of material fact precluding a grant of summary judgment.  Under Defendants' version of events, after Defendants stopped Cooper's vehicle, O'Rourke approached Smith's side of the vehicle, and Pastore approached Cooper's side of the vehicle.  After O'Rourke asked Smith his name, and Smith identified himself, Smith exited the vehicle in response to O'Rourke's request.  Defendants contend that O'Rourke told Smith that he was conducting a drug

---

[14]To the extent that Plaintiffs argue that a different standard applies under New York law to the determination of whether information from informants furnishes probable cause, see Pls.' Mem. of Law in Opp. at 9-10, as noted at page 12 and footnote 7, supra, Plaintiffs' state law claims have been abandoned and, in any event, are time-barred.

investigation and asked Smith whether he was in possession of any drugs, to which Smith

replied, "I have some weed in my pocket," and then removed two plastic bags of marijuana from

his shirt pocket and handed them to O'Rourke.  At that point in time, O'Rourke rear handcuffed

Smith and told him that he was under arrest.

Under Plaintiffs' version of events, however, O'Rourke approached Cooper's side of the

vehicle, and Pastore approached Smith's side of the vehicle.  O'Rourke asked Cooper for her

driver's license, registration, and insurance before asking Smith his name and asking him to exit

the vehicle.  According to Smith, once he stepped out of the vehicle, Pastore started searching in

his pockets and pulled out cigars and the marijuana, at which point in time he was rear

handcuffed and walked to the back of the vehicle.

As explained by the Second Circuit,

> In Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),
> the Supreme Court carved out an exception to the general rule requiring
> probable cause for a search, permitting an investigating officer briefly to
> detain an individual for questioning if the officer has a reasonable
> suspicion "that criminal activity may be afoot."  The investigating officer
> may also frisk an individual for weapons if the officer reasonably believes
> that person to be armed and dangerous. See Adams v. Williams, 407 U.S.
> 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); McCardle v. Haddad,
> 131 F.3d 43, 49 (2d Cir. 1997).

United States v. Colon, 250 F.3d 130, 134 (2d Cir. 2001).

"As part of a Terry stop, an officer may conduct a pat-down frisk in which he [or she]

may conduct a 'carefully limited search of the outer clothing . . . in an attempt to discover

weapons.' " Allen v. N.Y.C. Police Dep't, No. 07 Civ. 8682, 2010 WL 1790429, at *7 (S.D.N.Y.

May 5, 2010) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)).  Construing the evidence in the

light most favorable to Plaintiffs and resolving all factual disputes in their favor, Pastore's

immediate search of Smith's pockets once Smith exited the vehicle, without first doing a pat-

down of the pockets to see whether they contained weapons, exceeded the permissible scope of a Terry stop. Id. (citing Sibron v. New York, 392 U.S. 40, 65 (1968) (holding that where an officer made no "limited exploration for arms" and simply thrust his hand into the defendant's pocket, the search exceeded the scope of Terry)).

Having found that there are genuine issues of material fact regarding the lawfulness of the initial search of Smith's person, the Court considers whether Defendants are entitled to qualified immunity with respect to this claim. "Qualified immunity protects officials from liability for civil damages as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Gilles v. Repicky, 511 F.3d 239, 243 (2d Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood from the existing law that [his or her] conduct was unlawful." Allen v. New York City Dep't of Corr., No. 06 Civ. 7205, 2010 WL 1644943, at *15 (S.D.N.Y. Mar. 17, 2010) (internal quotation marks and citations omitted), adopted by, 2010 WL 1631404 (S.D.N.Y. Apr. 19, 2010). "A public official is thus entitled to qualified immunity if (1) his [or her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him [or her] to believe that his [or her] actions were lawful at the time of the challenged act." Id. (internal quotation marks and citations omitted). "Since qualified immunity is as an affirmative defense, defendants 'bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time.' " Id. (quoting Varrone v. Bilotti, 123 F.3d 75, 78 (2d Cir. 1997)). "An officer's belief that his [or her] action does not violate clearly established law is objectively

reasonable if officers of reasonable competence could disagree on the legality of the defendant's actions." Griffin v. Hannaford, No. 10-4236, 2012 WL 1560665, at *1 (2d Cir. May 4, 2012) (internal quotation marks and citations omitted). "[I]n the absence of a material factual dispute, the question of whether it was objectively reasonable for the officers to believe that they did not violate the plaintiff's rights is a purely legal determination for the court to make." Id. (alteration in original) (internal quotation marks and citation omitted). However, "[i]n the event that there are triable disputes as to the circumstances that could dictate whether the defendant[] could reasonably believe that his [or her] conduct was lawful, summary judgment based on an immunity defense must be denied." Allen, 2010 WL 1644943, at *15 (citations omitted).

The law regarding the permissible scope of a Terry stop was clearly established at the time of the incident in question, and accepting Plaintiffs' version of the facts, it was not objectively reasonable for Defendants to believe that they could immediately search Smith's pockets following a stop supported only by reasonable suspicion. Thus, because there are genuine issues of material fact regarding what transpired upon Smith's exit from Cooper's vehicle,[15] Defendants are not entitled to summary judgment on this claim on the ground of

---

[15]As noted in footnote 2, supra, Plaintiffs provide conflicting testimony as to whether Smith was first handcuffed by Pastore upon his exit from the vehicle, prior to the search of his pockets. However, as one district court explained, "the brief use of handcuffs during a Terry stop does not elevate a Terry stop to an arrest, nor is an officer prohibited from using handcuffs when faced with a Terry stop subject who indicates a desire to leave, and attempts to do so, before the officer has completed the stop, especially when the stop is of short duration." United States v. Echevarria, 692 F. Supp. 2d 322, 334 n.5 (S.D.N.Y. 2010) (citations omitted). Because there are issues of fact regarding the events that transpired after the stop of Cooper's vehicle, the Court cannot resolve the issue of whether, assuming arguendo that Smith was immediately handcuffed, such conduct constitutes an unlawful seizure.

qualified immunity.[16]

**B.**    **Smith's § 1983 False Arrest Claim**

"The common law tort of false arrest is a species of false imprisonment, an action derived

from the ancient common-law action of trespass [that] protects the personal interest of freedom

from restraint of movement." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)

(internal quotation marks and citation omitted).  "Under New York law, a plaintiff claiming false

arrest must show, *inter alia*, that the defendant intentionally confined him [or her] without his [or

her] consent and without justification." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)

(citation omitted).  A claim for false arrest under 42 U.S.C. § 1983 is substantially the same as a

claim for false arrest arising under state law. Id. (citations omitted).  "The existence of probable

cause to arrest constitutes justification and is a complete defense to an action for false arrest

whether that action is brought under state law or under § 1983." Id. (internal quotation marks

and citations omitted).

Probable cause to arrest exists "when the arresting officer has knowledge or reasonably

trustworthy information sufficient to warrant a person of reasonable caution in the belief that an

offense has been committed by the person to be arrested." Singer, 63 F.3d at 119 (internal

---

[16]"Plausible instructions from a superior or fellow officer support qualified immunity
where, viewed objectively in light of the surrounding circumstances, they could lead to a
reasonable officer to conclude that the necessary legal justification for his [or her] actions exists
(*e.g.* a warrant, probable cause, exigent circumstances)." Annunziata v. City of New York, No.
06 Civ. 7637, 2008 WL 2229903, at *5 (S.D.N.Y. May 28, 2008) (internal quotation marks and
citation omitted).  However, in this case, the fact that O'Rourke was the one who spoke to the
confidential informant and then relayed the information from the informant to Pastore does not
mean that Pastore is shielded from liability by qualified immunity.  As explained above, the
information known to O'Rourke and conveyed to Pastore did no more than provide reasonable
suspicion for the stop of Cooper's vehicle.  Thus, it would not have been objectively reasonable
for Pastore to believe that he could conduct a search of Smith's pockets when Smith first exited
the vehicle.

quotation marks and citation omitted). "Whether or not an officer had probable cause to make an arrest is a question of what the officer knew at the time of the arrest and whether she or he was reasonable in relying on that knowledge." Coyle v. Coyle, 354 F. Supp. 2d 207, 211 (E.D.N.Y.) (internal quotation marks and citation omitted), aff'd, 153 F. App'x 10 (2d Cir. 2005).

Probable cause need not be "predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer," but only on whether probable cause existed for the arrest. Jaegly v. Couch, 439 F.3d 149, 153-54 (2d Cir. 2006). A "plaintiff is not entitled to damages under § 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest." Id. at 154.

In this case, it is undisputed that after stopping Cooper's vehicle, Defendants recovered marijuana from Smith's person, which gave rise to probable cause to arrest Smith. See Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999) (even if there was no probable cause for a stop and search, there was probable cause to arrest the plaintiff upon the discovery of handguns in part because "the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant"). Although the parties dispute whether it was O'Rourke or Pastore who recovered the marijuana, compare Defs.' 56.1 ¶ 121 with Radi Decl. Ex. L at 151, that is irrelevant to the determination of whether Smith's arrest was supported by probable cause. Therefore, summary judgment is granted to Defendants on Smith's false arrest claim.[17]

---

[17]Because Smith's arrest was lawful, any search of his person incident to the arrest was lawful as well. See Arizona v. Gant, 556 U.S. 332, 338 (2009) ("Among the exceptions to the warrant requirement is a search incident to a lawful arrest.") (citing Weeks v. United States, 232 U.S. 383, 392 (1914)); United States v. Gonzalez, No. 08 Cr. 363, 2009 WL 613201, at *3 (S.D.N.Y. Mar. 4, 2009) ("Once under arrest, a suspect automatically may be subjected to a warrantless search incident to that arrest.") (citing United States v. Robinson, 414 U.S. 218

**C.**   **Smith's § 1983 Claim for Malicious Prosecution**

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his [or her] rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted). "In New York, a plaintiff alleging malicious prosecution must show: (1) the defendant commenced a criminal proceeding against him [or her]; (2) the proceeding ended in the plaintiff's favor; (3) the defendant did not have probable cause to believe the plaintiff was guilty of the crime charged; and (4) the defendant acted with actual malice." Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir. 1994) (citation omitted). "The existence of probable cause is a complete defense to a claim of malicious prosecution in New York[.]" Manganiello, 612 F.3d at 161-62 (internal quotation marks, alteration, and citation omitted). As one court explained, "probable cause is a bar to claims of malicious prosecution directed at the arresting officer under § 1983 or cognate state law, unless that officer, following the arrest but prior to initiating prosecution, learned of facts that would negate his [or her] earlier determination of probable cause." Moscoso v. City of New York, 92 F. Supp. 2d 310, 313 (S.D.N.Y. 2000) (citation omitted).

In this case, Smith's claim for malicious prosecution fails because there was probable cause to arrest Smith, and there is no evidence whatsoever that O'Rourke subsequently learned of facts that would negate his determination of probable cause. Accordingly, Defendants are granted summary judgment on Smith's malicious prosecution claim.

---

(1973)), aff'd, 441 F. App'x 31 (2d Cir. 2011).

**D.**    **Cooper's Claim for Unreasonable Search of her Vehicle**[18]

"[A]n automobile may be searched incident to the arrest of an occupant even after the arrestee has been secured and cannot access the interior of the vehicle as long as 'it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.' " United States v. Gonzalez, 441 F. App'x 31, 34 (2d Cir. 2011) (quoting Arizona v. Gant, 556 U.S. 332, 129 S. Ct. 1710, 1714 (2009)).  Furthermore, "[u]nder the 'automobile exception' to the Fourth Amendment warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004) (citations omitted).  "Probable cause in this context does not demand certainty but only a fair probability that contraband or evidence of a crime will be found." Gonzalez, 441 F. App'x at 34 (internal quotation marks and citation omitted).

In this case, O'Rourke had received a tip from his confidential informant that Smith, who was entering Cooper's vehicle, had just purchased and was in possession of crack cocaine.  After stopping Cooper's vehicle, Defendants recovered marijuana from Smith's person.  At that point, Smith was placed under arrest.  According to Defendants, O'Rourke then struggled with Smith in an attempt to recover the plastic bags of crack cocaine that Smith had behind his back. According to Smith, he did not have any crack cocaine in his possession.  Under either scenario,

---

[18]Although it is not clear that the Complaint asserts a claim on Smith's behalf for unlawful search of Cooper's vehicle, even if it did, Defendants are correct that Smith cannot bring such a claim.  See United States v. Bulluck, No. 09 Cr. 652, 2010 WL 1948591, at *11 (S.D.N.Y. May 13, 2010) ("It is well settled that non-owner passengers cannot bring a Fourth Amendment challenge to a search of the interior of a vehicle because they do not possess a reasonable expectation of privacy in a vehicle that is not their own.") (citing Rakas v. Illinois, 439 U.S. 128, 148 (1978); United States v. Paulino, 850 F.2d 93, 97 (2d Cir. 1988)).

it was reasonable for Defendants to believe both that Smith might have hidden either additional drugs or the crack cocaine itself in Cooper's vehicle and that there was a "fair probability" that such drugs would be found through a search of the vehicle. Thus, the search of the vehicle was lawful even if, as Plaintiffs state in their opposition brief, "[i]t is not in dispute that the Defendants did not search Cooper's entire vehicle until after Smith was arrested and removed from the scene." Pls.' Mem. of Law in Opp. at 16; see Gonzalez, 441 F. App'x at 34, supra; see also McZorn v. Johnson City Police Dep't, No. 3:08-CV-0726, 2009 WL 5216946, at *4 (N.D.N.Y. Dec. 30, 2009) (having recovered two bags of marijuana from passenger's purse, police officer had "probable cause to search the rest of the car for drugs").

The fact that Cooper was ordered out of her vehicle for the purposes of the search does not give rise to a Fourth Amendment violation. See Mollica v. Volker, 229 F.3d 366, 369 (2d Cir. 2000) ("[I]f a stop is lawful, passengers and drivers have no Fourth Amendment interest in not being ordered out of the stopped vehicle.") (citing Maryland v. Wilson, 519 U.S. 408 (1997); Pennsylvania v. Mimms, 434 U.S. 106 (1977)). Furthermore, to the extent that Cooper argues that during the entire incident she "was in police custody and was not free to leave the scene," Pls.' Mem. of Law in Opp. at 17, any detention incident to the lawful search of her vehicle cannot give rise to a Fourth Amendment violation. Cf. Hicks v. City of Buffalo, 124 F. App'x 20, 24 (2d Cir. 2004) (Noting, in upholding the grant of summary judgment on the plaintiffs' false arrest claim, "there is no evidence that any plaintiff was confined or subject to any form of restraint beyond that permissibly associated with the lawful search of the premises. See Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981)."). Insofar as Cooper complains about threatening or abusive comments made by O'Rourke during the search, such comments are not actionable. See, e.g., Calderon v. Wheeler, No. 9:06-CV-0963, 2009 WL

2252241, at *13 (N.D.N.Y. July 28, 2009) ("42 U.S.C. § 1983 is not designed to rectify

harassment or verbal abuse.") (citation omitted); Keyes v. City of Albany, 594 F. Supp. 1147,

1155 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language, no matter how abhorrent or

reprehensible, cannot form the basis for a § 1983 claim.") (citations omitted).  Finally, to the

extent that Cooper challenges the search of her person, such search was attributed to an

"unidentified female officer."  Pls.' 56.1 at p. 8.  Since, as noted in footnote 9, supra, the Court

dismisses Plaintiffs' claims against the John and Jane Doe Defendants, any such claim is hereby

dismissed.

E.      **Plaintiffs' Due Process Claims**

        The first and second causes of action in Plaintiffs' Complaint include procedural due

process claims on behalf of Cooper and Smith.  The seventh, and final, cause of action is for a

violation of Plaintiffs' "substantive due process right to personal security."  Compl. ¶ 82.  In

Plaintiffs' brief in opposition to the motion, they characterize their due process claims as being

based on (i) the stop of Cooper's vehicle, and (ii) Smith's arrest.  See Pls.' Mem. of Law in Opp.

at 17.

        As both Plaintiffs and Defendants acknowledge, "Due process is violated where officers

act in bad faith and make an arrest without probable cause."  Sheikh v. City of New York Police

Dep't, nos. 03-CV-6326, 05-CV-4718, 2008 WL 5146645, at *8 (E.D.N.Y. Dec. 5, 2008).

Accordingly, in light of the Court's finding that there was probable cause for Smith's arrest, his

due process claims fail.  See id. ("Where, as here, probable cause has been clearly established,

there can be no claim for denial of either the procedural or substantive right to due process.")

(internal quotation marks and citation omitted).  In addition, both Cooper's and Smith's due

process claims must be dismissed as duplicative of their Fourth Amendment claims for unlawful

stop and false arrest.  See, e.g., Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular

Amendment 'provides an explicit textual source of constitutional protection' against a particular

sort of government behavior, 'that Amendment, not the more generalized notion of "substantive

due process," must be the guide for analyzing these claims.' ") (quoting Graham v. Connor, 490

U.S. 386, 395 (1989)); Rockland Vending Corp. v. Creen, No. 07-CV-6268, 2009 WL 2407658,

at *4 (S.D.N.Y. Aug. 4, 2009) ("a due process claim relying on the same facts as a false

imprisonment claim cannot be sustained") (citing cases).

## F.    Smith's Claim for Excessive Use of Force

Defendants move for summary judgment on all of Plaintiffs' claims except for Smith's §

1983 excessive force claim against O'Rourke.  See Mem. of Law in Supp. (Docket # 22) at 1 n.1.

Thus, this claim will proceed to trial.  However, the claim is dismissed as against Pastore based

not only on Plaintiffs' abandonment of the claim, as explained at pages 11-12, supra, but also on

Plaintiffs' admissions that Pastore "did not punch or choke plaintiff Smith" and "did not use

excessive force against plaintiffs."  Radi Decl. Ex. E ¶¶ 4-5; Radi Decl. Ex. F ¶¶ 4-5; see Fed. R.

Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on

motion, permits the admission to be withdrawn or amended.").

## G.    Punitive Damages

Defendants move for summary judgment on the issue of whether Plaintiffs are entitled to

punitive damages.  "Generally, the issue of whether to award punitive damages is an issue for the

jury to decide based on an evaluation of the plaintiff's proof of sufficiently serious misconduct."

Picciano v. McLoughlin, 723 F. Supp. 2d 491, 506 (N.D.N.Y. 2010) (internal quotation marks

and citations omitted).  Therefore, with respect to those claims that are proceeding to trial –

Smith's § 1983 unlawful search claim based on the initial search of his person and Smith's §

1983 excessive force claim against O'Rourke – the issue of whether to award punitive damages is to be determined at trial as well.  See Emblen v. Port Auth. of New York/New Jersey, No. 00 Civ. 8877, 2002 WL 498634, at *12 (S.D.N.Y. Mar. 29, 2002) ("[B]ecause [plaintiff] has provided sufficient evidence to overcome summary judgment, the Court cannot state as a matter of law that [plaintiff] is not entitled to punitive damages."); Picciano, 723 F. Supp. 2d at 506 ("Where the plaintiff has provided sufficient evidence to overcome summary judgment with respect to excessive force, the Court cannot state as a matter of law that the [plaintiff] is not entitled to punitive damages.") (internal quotation marks and citation omitted).

## CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment (Docket # 19) is granted in part and denied in part.  The City of New Rochelle, Defendants Pastore and O'Rourke in their official capacities, and the John and Jane Doe Defendants are all dismissed from the action.  Since the only claims remaining in the case are brought on behalf of Plaintiff Gregory Smith, Plaintiff Amey Cooper is dismissed from the action as well.  The remaining parties are directed to contact the Court to schedule a final pre-trial conference.

Dated: February 26, 2013
      White Plains, New York

SO ORDERED,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York